## ROBINSON *v.* NEIL, WARDEN

No. 71–6272.   Argued December 6, 1972—Decided January 16, 1973

REHNQUIST, J., delivered the opinion for a unanimous Court.
BRENNAN, J., filed a separate opinion, in which DOUGLAS and
MARSHALL, JJ., joined, *post*, p. 511.

*James D. Robinson* argued the cause for petitioner.
With him on the brief was *Jerry H. Summers.*

*Bart C. Durham III,* Assistant Attorney General of
Tennessee, argued the cause for respondent.   With him
on the brief were *David M. Pack,* Attorney General, and
*William C. Koch, Jr.,* Assistant Attorney General.

MR. JUSTICE REHNQUIST delivered the opinion of the
Court.

In 1962 petitioner was tried and convicted in the
Chattanooga municipal court of three counts of assault
and battery in violation of a city ordinance.   He was
fined $50 and costs on each count.   He was later indicted
by the grand jury of Hamilton County, Tennessee, which,
out of the same circumstances giving rise to the municipal
trial, charged him with three offenses of assault with
intent to commit murder in violation of state law.   The
petitioner pleaded guilty to the state charges and re-
ceived consecutive sentences of three to 10 years for
two offenses and three to five years for the third offense.
He is presently in the custody of the respondent warden
of the Tennessee State Penitentiary.

In 1966 the petitioner unsuccessfully sought habeas corpus relief in state courts on the ground that the second convictions for state offenses violated his federal constitutional guarantee against twice being placed in jeopardy for the same offense. In 1967 federal courts denied a similar request for habeas corpus relief. *Robinson* v. *Henderson,* 268 F. Supp. 349 (ED Tenn. 1967), aff'd, 391 F. 2d 933 (CA6 1968). In 1970 the petitioner renewed his claims for habeas relief, basing his arguments on this Court's intervening decisions in *Benton* v. *Maryland,* 395 U. S. 784 (1969), and *Waller* v. *Florida,* 397 U. S. 387 (1970). Holding that *Waller* was to be accorded retrospective effect, the District Court granted the petitioner habeas corpus relief. 320 F. Supp. 894 (ED Tenn. 1971). The Sixth Circuit reversed (452 F. 2d 370 (1971)) and we granted certiorari to decide the retroactivity of *Waller* v. *Florida.* 406 U. S. 916 (1972).

The Fifth Amendment's guarantee that no person be twice put in jeopardy for the same offense was first held binding on the States in *Benton* v. *Maryland, supra.* Our subsequent decision in *Waller* v. *Florida, supra,* held that the scope of this guarantee precluded the recognition of the "dual sovereignty" doctrine with respect to separate state and municipal prosecutions. *Waller* involved the theft of a mural from the City Hall of St. Petersburg, Florida. The petitioner there was first tried and convicted of violating city ordinances with respect to the destruction of city property and breach of the peace. Subsequently, he was convicted of grand larceny in violation of state law involving the same theft. The Court stated:

> "the Florida courts were in error to the extent of holding that—
> " 'even if a person has been tried in a municipal court for the identical offense with which he is charged

in a state court, this would not be a bar to the prosecution of such person in the proper state court.'" 397 U. S., at 395.

Prior to this Court's 1965 decision in *Linkletter* v. *Walker,* 381 U. S. 618, there would have been less doubt concerning the retroactivity of the *Waller* holding. For, until that time, both the common law and our own decisions recognized a general rule of retrospective effect for the constitutional decisions of this Court, *e. g., Norton* v. *Shelby County,* 118 U. S. 425, 442 (1886), subject to limited exceptions of a nature such as those stated in *Chicot County Drainage District* v. *Baxter State Bank,* 308 U. S. 371 (1940). In *Linkletter,* the Court, declaring that it was charting new ground (381 U. S., at 628 and n. 13), held that with respect to new constitutional interpretations involving criminal rights "the Constitution neither prohibits nor requires retrospective effect." *Id.,* at 629. *Linkletter* and succeeding cases established a set of factors for determining which constitutional rules were to be accorded retrospective and which prospective effect only.* The District Court and the Sixth Circuit in this case applied the factors enunciated by these cases to the *Waller* holding. The Sixth Circuit held, contrary to the conclusion of the District Court, that *Waller* is not to be applied retroactively.

We do not believe that this case readily lends itself to the analysis established in *Linkletter.* Certainly, there is nothing in *Linkletter* or those cases following it to indicate that all rules and constitutional interpretations arising under the first eight Amendments must be subjected to the analysis there enunciated. *Linkletter* itself announced an exception to the general rule of retro-

---

*See *Desist* v. *United States,* 394 U. S. 244 (1969), which carefully examined all of the cases decided since *Linkletter* and more fully enunciated the guiding criteria of those cases.

activity in a decision announcing that the exclusionary rule of *Mapp* v. *Ohio,* 367 U. S. 643 (1961), would be given prospective effect only. *Linkletter,* and the other cases relied upon by the Sixth Circuit, dealt with those constitutional interpretations bearing on the use of evidence or on a particular mode of trial. Those procedural rights and methods of conducting trials, however, do not encompass all of the rights found in the first eight Amendments. Guarantees that do not relate to these procedural rules cannot, for retroactivity purposes, be lumped conveniently together in terms of analysis. For the purpose and effect of the various constitutional guarantees vary sufficiently among themselves so as to affect the necessity for prospective rather than retrospective application.

*Linkletter* indicated, for instance, that only those procedural rules affecting "the very integrity of the factfinding process" would be given retrospective effect. 381 U. S., at 639. In terms of some nonprocedural guarantees, this test is simply not appropriate. In *Furman* v. *Georgia,* 408 U. S. 238 (1972), for example, this Court held that in the situation there presented imposition of the death penalty was not constitutionally permissible. Yet, while this holding does not affect the integrity of the factfinding process, we have not hesitated to apply it retrospectively without regard to whether the rule meets the *Linkletter* criteria. *E. g., Walker* v. *Georgia,* 408 U. S. 936.

The prohibition against being placed in double jeopardy is likewise not readily susceptible of analysis under the *Linkletter* line of cases. Although the Court has not handed down a fully reasoned opinion on the retroactivity of *Benton* v. *Maryland,* it has indicated that it is retroactive without examination of the *Linkletter* criteria. *North Carolina* v. *Pearce,* 395 U. S. 711 (1969); *Ashe* v. *Swenson,* 397 U. S. 436, 437 n. 1 (1970). These

decisions do not directly control the question of whether *Waller* should be given retrospective effect but they bear upon its disposition.

The guarantee against double jeopardy is significantly different from procedural guarantees held in the *Linkletter* line of cases to have prospective effect only. While this guarantee, like the others, is a constitutional right of the criminal defendant, its practical result is to prevent a trial from taking place at all, rather than to prescribe procedural rules that govern the conduct of a trial. A number of the constitutional rules applied prospectively only under the *Linkletter* cases were found not to affect the basic fairness of the earlier trial, but to have been directed instead to collateral purposes such as the deterrence of unlawful police conduct, *Mapp* v. *Ohio, supra.* In *Waller,* however, the Court's ruling was squarely directed to the prevention of the second trial's taking place at all, even though it might have been conducted with a scrupulous regard for all of the constitutional procedural rights of the defendant.

We would not suggest that the distinction that we draw is an ironclad one that will invariably result in the easy classification of cases in one category or the other. The element of reliance embodied in the *Linkletter* analysis will not be wholly absent in the case of constitutional decisions not related to trial procedure, as indeed this case when contrasted with *Furman* illustrates.

In *Furman* v. *Georgia, supra,* our mandate was tailored so as to deny to the State only the authority to impose a punishment that we held unconstitutional, without the necessity of a redetermination of the factual question of whether the offense had in fact been committed. Thus, the prejudice to the State resulting from the necessity of an entirely new trial because of procedures newly found to be constitutionally defective, with the

attendant difficulties of again assembling witnesses whose memories would of necessity be dimmer for the second trial than for the first, was not present. That which was constitutionally invalid could be isolated and excised without requiring the State to begin the entire factfinding process anew.

The application of *Waller* retrospectively may, on the other hand, result in a form of prejudice to the State because, in reliance upon the "dual sovereignty" analogy, the municipal prosecution may have occurred first and the sentence already have been served prior to the commencement of the state prosecution. If the offense involved was a serious one under state law, as it apparently was in this case, the defendant may have been unintentionally accorded a relatively painless form of immunity from the state prosecution. But the Court's opinion in *Waller* makes clear that the analogy between state and municipal prosecutions, and federal and state prosecutions permitted in *Bartkus* v. *Illinois*, 359 U. S. 121 (1959), had never been sanctioned by this Court and was not analytically sound. Since the issue did not assume federal constitutional proportions until after *Benton* v. *Maryland* held the Double Jeopardy Clause applicable to the States, this Court had not earlier had occasion to squarely pass on the issue. But its decision in *Waller* cannot be said to have marked a departure from past decisions of this Court. Therefore, while *Waller*-type cases may involve a form of practical prejudice to the State over and above the refusal to permit the trial that the Constitution bars, the justifiability of the State's reliance on lower court decisions supporting the dual sovereignty analogy was a good deal more dubious than the justification for reliance that has been given weight in our *Linkletter* line of cases. We intimate no view as to what weight should be accorded

to reliance by the State that was justifiable under the *Linkletter* test in determining retroactivity of a non-procedural constitutional decision such as *Waller*.

We hold, therefore, that our decision in *Waller* v. *Florida* is to be accorded full retroactive effect. We refrain from an outright reversal of the judgment below, however, because statements of counsel at oral argument raised the issue of whether the state and municipal prosecutions were actually for the same offense. We therefore vacate the judgment of the Court of Appeals and remand the case so that respondent may have an opportunity to present this issue there or in the District Court.

*It is so ordered.*

MR. JUSTICE BRENNAN, with whom MR. JUSTICE DOUGLAS and MR. JUSTICE MARSHALL concur.

Although I otherwise join the opinion of the Court, I would reverse the judgment of the Court of Appeals outright. I adhere to my view that, regardless of the similarity of the offenses, the Double Jeopardy Clause of the Fifth Amendment, which is applicable to the States through the Fourteenth Amendment, *Benton* v. *Maryland,* 395 U. S. 784 (1969), requires the prosecution, except in most limited circumstances not present here, "to join at one trial all the charges against a defendant that grow out of a single criminal act, occurrence, episode, or transaction." *Ashe* v. *Swenson,* 397 U. S. 436, 453–454 (1970) (BRENNAN, J., concurring); see *Grubb* v. *Oklahoma, post,* p. 1017 (1972) (BRENNAN, J., dissenting); *Miller* v. *Oregon,* 405 U. S. 1047 (1972) (BRENNAN, J., dissenting); *Harris* v. *Washington,* 404 U. S. 55, 57 (1971) (separate statement of DOUGLAS, BRENNAN, and MARSHALL, JJ.). Under this "same transaction" test, all charges against petitioner should have been brought in a single prosecution.