**Samuel A. HARVEY, PMB #72820**
**Petitioner,**

v.

**C. Murray HENDERSON, Warden, Louisiana State Penitentiary,**
**Respondent.**

**Civ. A. No. 74–455.**

United States District Court,
W. D. Louisiana,
Shreveport Division.

Nov. 8, 1974.

Samuel A. Harvey, pro se.

John A. Richardson, Jr., Dist. Atty., First Judicial District Court, Shreveport, La., for respondent.

## RULING

DAWKINS, Senior District Judge.

May 6, 1974, we directed the State, through its District Attorney for the First Judicial District Court, Caddo Parish, Louisiana, to file with us a certified copy of its complete record in this matter in accordance with 28 U.S.C. § 2254(e), (f). That record now has been received, together with a response, brief and supplemental brief of authorities from the District Attorney.

Petitioner has exhausted his remedies in the State trial Court and the Louisiana Supreme Court, State of Louisiana ex rel. Harvey v. Henderson, 293 So.2d 189 (1974, decided by a *unanimous* Court).

Harvey contends that twenty-one and ten year consecutive sentences, which were imposed upon him January 7, 1972 by the Caddo Parish District Court, were unconstitutional in that charges of murder, followed by negotiated pleas of guilty to manslaughter and theft, and his convictions and sentences thereupon, constituted multiple statutory offenses, arising out of the same incident, thus violating the double jeopardy safeguards of the Fifth Amendment to the Federal Constitution.

The complete record before us provides petitioner with the equivalent of a full and fair evidentiary hearing. Fay v. Noia, 372 U.S. 391, 83 S.Ct. 822, 9 L.Ed.2d 837; Dempsey v. Wainwright, 471 F.2d 604 (5th Cir., 1973).

The record reflects that petitioner and his wife, Marie Robelow Harvey, on October 22, 1971 were indicted for the offense of murder as defined by La. R.S. 14:30 in that they murdered Aubrey Herrin. January 7, 1972, a Bill of Information was filed charging petitioner with the offense of theft, La.R.S. 14:67, which at that time, if the value of the thing taken amounted to more than $100.00, involved a maximum penalty of ten years, petitioner being charged with having stolen $295.00.

Petitioner, represented by able counsel (a former Law Clerk to this Judge), was arraigned January 7, 1972, upon a negotiated plea agreement, wherein he entered pleas of guilty to both manslaughter and theft. A full transcript of the arraignment, and entry of petitioner's guilty pleas, is found in the record.

At the arraignment, Major J. K. Lanigan of the Shreveport Police Department, testified, in relevant part, at Tr. 7:

"According to what happened, Mrs. Harvey came down into the apartment to use the telephone. She bought two cokes from this man and saw he had some money. She went back upstairs and the accused man, Harvey, was asleep at this time. She awakened him and told him that this man had money and they should get it. He said, well, let's go down there now and get it. They decided to do that. They entered the apartment, she acting as

if she was using the telephone, and the accused man, Mr. Harvey came up behind this gentleman, the deceased man, struck him in the head with the hammer, knocking him to the floor. . . ."

Major Lanigan further testified that they thereafter ransacked the apartment stealing some $295.00, which was property of the decedent.

At Tr. 9 the following colloquy between the Court and petitioner is shown:

"THE COURT: Were you involved with the taking of the money from his person or belongings in removing them and placing them in the suitcase?

DEFENDANT: Yes, sir.

THE COURT: Did you take the money from him?

DEFENDANT: Yes, sir."

Just this year the Louisiana Supreme Court ruled that double jeopardy applied where a habeas petitioner entered pleas of guilty to charges of murder without capital punishment and to attempted armed robbery growing out of the same incident. It vacated the robbery conviction and sentence. State ex rel. Wikberg v. Henderson, Warden, 292 So.2d 505 (La.1974); accord, Colle v. Henderson, 350 F.Supp. 1010 (W.D.La.1972); Reeves v. Henderson, 380 F.Supp. 661 (W.D.La.1974).

The apparent close question here to be resolved (which actually is not close at all) is whether petitioner twice was placed in jeopardy by his guilty pleas. If so, a constitutional issue is presented by the Fifth Amendment proscription against double jeopardy, as applied to and enforceable against the State through the Fourteenth Amendment.

■ The test of the identity of offenses is whether each separate statutory provision requires proof of additional facts which the other does not. Blockburger v. United States, 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306. There are certain cases in which a defendant is charged on several counts, under two or more statutes, and receives consecutive or concurrent sentences, in the discretion of the trial judge. United States v. Hale, 468 F.2d 435 (5th Cir., 1972). In the last cited case conviction upon each of six counts required proof which the others did not. The distinction between double jeopardy and multiplicitous offenses is discussed further in United States v. James Delmore Deaton, 468 F.2d 541 (5th Cir., 1972).

■ A single act may constitute an offense against two statutes; but if each statute requires proof of an additional fact or facts which the other does not, acquittal or conviction under either statute does not exempt a defendant committing the act from prosecution and punishment under the other. United States v. Tonarelli, 371 F.Supp. 891 (D. of Puerto Rico, 1973). There one of the charges was dismissed as constituting double jeopardy, inasmuch as the elements of both offenses were the same. In Robinson v. Neil, 409 U.S. 505, 93 S.Ct. 876, 35 L.Ed.2d 29 (1973), the Supreme Court granted certiorari and remanded in order that the respondent there might present evidence as to whether three State convictions of assault with intent to commit murder were the identical offenses for which petitioner had been convicted in a municipal court upon three counts of assault and battery.

Concededly in the case before us, one person could have committed the theft, misappropriation or wrongful taking, and another person could have committed murder (reduced to manslaughter) one requiring proof which the other did not. The essential elements required to support a conviction of the crime of manslaughter are not the same as those required to support a conviction of the crime of theft, and *vice versa*.

If in the case here, the theft to which petitioner pleaded guilty was a lesser included offense of the manslaughter charge to which he also pleaded guilty, we would have a case of double jeopardy. This was succinctly set forth in *Wikberg, supra*

"Of course, an essential element of the state's proof of felony-murder is

*th,e commission or attempted perpetration of the enumerated felony. The enumerated felony is therefore a different grade of the same offense (or an included offense) for double jeopardy purposes.* See C.Cr.P. Art. 596." (Emphasis ours)

In *Wikberg*, the Louisiana Supreme Court, as in *Colle*, held that the attempted armed robbery was an essential element of the crime of murder. The State could not obtain a murder conviction unless it proved the attempted armed robbery conviction under the provisions of Article 30 of the Louisiana Criminal Code. The plea of double jeopardy was upheld and the conviction for attempted armed robbery was set aside, because the two offenses were not separate and distinct.

We dealt with the double jeopardy, "felony-murder", doctrine, again, in Reeves v. Henderson, *supra*. We quoted with approval the Louisiana Supreme Court's decision in *Wikberg* when we set aside the murder conviction and let stand the conviction of attempted armed robbery without benefit of probation or parole.

In the case now before us we do not have the same situational facts as were presented in *Colle, Wikberg,* and *Reeves, supra* since the present case deals with separate and distinct crimes—that of manslaughter, and that of theft.

"Manslaughter is:

(1) A homicide which would be murder under subdivision (1) of Article 30 (Murder), but the offense is committed in sudden passion or heat of blood immediately caused by provocation sufficient to deprive an average person of his self-control and cool reflection. Provocation shall not reduce a homicide to manslaughter if the jury finds that the offender's blood had actually cooled, or that an average person's blood would have cooled, at the time the offense was committed; or

(2) A homicide committed, without any intent to cause death or great bodily harm.

(a) When the offender is engaged in the perpetration or attempted perpetration of any felony not enumerated in Article 30, or of any intentional misdemeanor directly affecting the person; or

(b) When the offender is resisting lawful arrest by means, or in a manner, not inherently dangerous, and the circumstances are such that the killing would not be murder under subdivision (1) of Article 30.

Whoever commits manslaughter shall be imprisoned at hard labor for not more than twenty-one years."

The Louisiana statute defining theft, LSA-R.S. 14:67, provides, in part:

"Theft is the misappropriation or taking of anything of value which belongs to another, either without the consent of the other to the misappropriation or taking, or by means of fraudulent conduct, practices, or representations. An intent to deprive the other permanently of whatever may be the subject of the misappropriation or taking is essential.

Whoever commits the crime of theft, when the misappropriation or taking amounts to a value of one hundred dollars or more, shall be imprisoned, with or without hard labor, for not more than ten years."

Petitioner was charged with murder. To avoid the possible death sentence, with the assistance and consultation rendered by competent counsel, he entered negotiated pleas of guilty to manslaughter and theft. Each was a separate and distinct offense. Neither of the crimes to which he pleaded guilty required proof of the other to support a conviction. The Louisiana Supreme Court so held in its unanimous decision rendered April 29, 1974 in which the Court said:

"Writ denied. We find no error in the trial court's finding that separate and distinct crimes were committed, so

no double jeopardy is involved, as is shown more particularly by the transcribed testimony of the hearing of January 7, when petitioner pleaded guilty to both crimes."

Under the manslaughter statute in effect when petitioner committed the offense to which he pleaded guilty, there were four legal concepts under which a person could be convicted. There were only two legal concepts to support a murder conviction. Briefly these four legal concepts are set forth:

1. An *intentional* killing committed in heat of passion, *or*

2. Felony manslaughter, *or*

3. An unintended killing resulting from the commission of an intentional misdemeanor directly affecting the person, *or*

4. An unintentional killing resulting from resisting arrest (note: this last concept has no bearing on the facts of this case and it will not be mentioned further).

Under these legal concepts, petitioner contends that the "felony-manslaughter" concept should apply, as did the felony-murder, double jeopardy, rationale applied in *Colle, Wikberg,* and *Reeves.*

Notwithstanding, the killing and theft committed by petitioner were separate and distinct crimes. The facts heretofore have been set forth by the testimony of the police officer and covered in a full transcript of the record.

Motive was not an essential element of the crime of manslaughter. Petitioner and his wife committed and completed the killing. They then committed and completed the theft by searching and ransacking the house until they found the money and took it.

Each case stands on its merits and the facts pertaining to that particular case. Here it appears possible that the State could have proved the offense of murder without necessarily showing motive. Moreover, in proving the charge of theft, completely unrelated facts could have been shown without requiring proof of facts of a killing constituting murder or manslaughter.

We concede, as contended by petitioner, that his act of killing and his act of theft were committed in the same place in close succession. His motives for the crime of killing and for the crime of theft were mere circumstantial and corroborative evidence in proving the identity of the persons or person committing the act. Each act in the commission of the crime, of itself, is sufficient to support the conviction, even though no motive was shown. Motive could have shown connexity between the crimes but it was not necessary for conviction as to either.

Petitioner freely admitted his part in the brutal killing, the consequences of which showed intent, from the very act itself. No claim of self-defense ever was made, nor was the victim ever given a chance to defend himself. The killing was not by accident or mistake. The State did not, nor did it have to, rely upon proof of theft to support a conviction for manslaughter, rendering it "felony-manslaughter".

From the record, we conclude that the killing of Herrin by petitioner certainly could have been intentional. Additionally, it could have come under the third concept, i. e. an unintentional killing resulting from the commission of an intentional misdemeanor directly affecting the person. The crime of battery could have been committed by petitioner in beating and suffocating Herrin. Even though petitioner may not have intended to kill, by the act of committing battery, with the resultant killing, all the requirements needed for his conviction of manslaughter under the statute covering this legal concept were met. Thus, the crime of theft is not an element in this legal concept of manslaughter, it being a separate and distinct act.

The State trial court has made findings of fact and ruled that petitioner was convicted of two separate offenses. This has been affirmed by the Louisiana Supreme Court, thus interpreting the

laws of the State, which is binding, if no constitutional question is involved. Hall v. Wainwright, 493 F.2d 37 (5th Cir., 1974).

Thus, we also find that two separate and distinct offenses were committed, one requiring proof that the other did not, and that there was no double jeopardy.

Accordingly, petitioner's application for a writ of habeas corpus is denied.