**James BRENSON, Jr., Petitioner,**

v.

**Joseph H. HAVENER, Superintendent, Respondent.**

**Civ. No. C74–497.**

United States District Court,
N. D. Ohio, W. D.

Aug. 29, 1975.

---

John C. Wasserman, Toledo, Ohio, for petitioner.

Donald Billman, Asst. Atty. Gen., Columbus, Ohio, for respondent.

OPINION and ORDER

DON J. YOUNG, District Judge.

This cause came to be heard upon two motions of a petitioner for a writ of habeas corpus. The first motion is for reconsideration of judgment entry on the motion to dismiss and the second is a motion to grant the writ of habeas corpus.

The petitioner is presently detained in the Southern Ohio Correctional Facility, Lucasville, Ohio serving a life imprisonment sentence following conviction for first degree murder in the Common Pleas Court of Lucas County, Ohio. This Court by a memorandum and order filed April 30, 1975, overruled a motion by the respondent to dismiss the petition. The Court found that the facts presented were not sufficient to allow a determination to be properly made as to whether or not petitioner was properly bound over for trial as an adult following a finding of delinquency by the juvenile court judge. In that memorandum and order, the Court determined that the petitioner had exhausted his state court remedies with respect to the following issues:

(1) that he was denied due process of law in that the juvenile court judge did not make a proper finding of delinquency before binding petitioner over, nor did he undertake a full and fair investigation of petitioner's fitness for rehabilitation within the juvenile system before waiving juvenile court jurisdiction and;

(2) the in court identifications of petitioner by two witnesses were tainted by illegal lineups and petitioner was thus denied rights guaranteed him under the Sixth and Fourteenth Amendments to the United States Constitution.

The petitioner now asks that the Court reconsider that determination.

While this Court is not willing to conclude that petitioner did, in fact, exhaust his state court remedies as to more than the two aforementioned issues, in light of the Supreme Court's recent decision in *Breed v. Jones*, 421 U.S. 519, 95 S.Ct. 1779, 44 L.Ed.2d 346 (1975), the Court will reconsider the necessity for exhaustion with respect to the issue of double jeopardy.

■ While the exhaustion of state remedies is required by the applicable statutes, 28 U.S.C. § 2254(b) and the case law, *Fay v. Noia*, 372 U.S. 391, 83 S.Ct. 822, 9 L.Ed.2d 837 (1963), it must be remembered that it is a doctrine of comity, not of jurisdiction. *Fay, supra* at 417–420, 83 S.Ct. 822. As the Supreme Court stated in *Braden v. 30th Judicial Circuit Court of Kentucky*, 410 U.S. 484, at 490, 93 S.Ct. 1123, at 1127, 35 L.Ed.2d 443 (1972):

> The exhaustion doctrine is a judicially crafted instrument which reflects a careful balance between important interests of federalism and the need to preserve the writ of habeas corpus as a "swift and imperative remedy in all cases of illegal restraint or confinement" *Secretary of State for Home Affairs v. O'Brien*, (1923) A.C. 603, 609 (H.L.). It cannot be used as a blunderbuss to shatter the attempt at litigation of constitutional claims without regard to the purposes that underlie the doctrine and that call it into existence.

The federal courts have not predicated their deference to state procedural rules on a want of power to entertain a habeas corpus application where a procedural default was committed by the defendant in state court. *Fay, supra* 372 U.S. at 425, 83 S.Ct. 822. Exhaustion is not a rule which distributes power between state and federal courts. *Id.* "The point is that the court, by relying on a rule of discretion, avowedly flexible, *Frisbie v. Collins*, 342 U.S. 519 [72 S.Ct. 509, 96 L.Ed. 541] (1952), yielding always to exceptional circumstances, *Bowen v. Johnston*, 306 U.S. 19, 27 [59 S.Ct. 442, 446, 83 L.Ed. 455] (1939) has refused to concede jurisdictional significance to the abortive state court proceeding." *Id.* 372 U.S. at 426, 83 S.Ct. at 842.

■ This Court believes that *Breed v. Jones, supra* creates exceptional circumstances. At the very least, exhausting state court remedies as to the issue of double jeopardy would have been an exercise in futility and that has never been required. *Matthews v. Wingo*, 474

F.2d 1266 (6th Cir. 1973) ; *Allen v. Perini*, 424 F.2d 134 (6th Cir. 1970). This Court then, in its discretion, will not require petitioner to exhaust his state remedies as to the issue of double jeopardy.

In the present case, this Court has previously held in its memorandum and order filed April 30, 1975 that the juvenile court did make a finding of delinquency before binding petitioner over to be tried as an adult. Petitioner was then bound over to the Common Pleas Court and tried for the same offense which was the subject of the juvenile hearing. There is no dispute that in his trial as an adult petitioner was entitled to the full protection of the double jeopardy clause of the Fifth Amendment as applied to the states through the Fourteenth Amendment. *Benton v. Maryland*, 395 U.S. 784, 89 S.Ct. 2056, 23 L. Ed.2d 707 (1969). There can also be no doubt that petitioner was put in jeopardy by that proceeding. *Downum v. United States*, 372 U.S. 734, 83 S.Ct. 1033, 10 L.Ed.2d 100 (1963).

The United States Supreme Court in *Breed v. Jones, supra*, held that in juvenile proceedings "whose object is to determine whether [petitioner] has committed acts that violate the criminal law and whose potential consequences include both the stigma inherent in such a determination and the deprivation of [life and] liberty for many years", the juvenile is put in jeopardy. *Id.* and that jeopardy attached when the trier of fact began to hear evidence. *Id.* 421 U.S. 519, 95 S.Ct. 1779. The Supreme Court then held that no exception to the double jeopardy requirement should be allowed in the juvenile court setting, stating that it will not diminish the flexibility and informality of juvenile proceedings. *Id.* 421 U.S. 519, 95 S.Ct. 1779. The Supreme Court concluded that "the prosecution of (petitioner) in Superior Court, after an adjudication proceeding in Juvenile Court, violated the Double Jeopardy Clause of the Fifth Amendment, as

applied to the states through the Fourteenth Amendment."

■ This Court is compelled to reach the same conclusion as to the petitioner Brenson. He was subject to an adjudicatory hearing in juvenile court in which the judge found that he had committed acts which if committed by an adult would constitute felonies. Juv.R. 180. This finding of delinquency was made after a factual hearing before the juvenile court waived jurisdiction and bound petitioner over for trial as an adult. The trial in the common pleas court placed the petitioner in jeopardy for the second time thus violating his constitutional rights. Its result may not stand.

■ The question arises as to whether the result reached by the Supreme Court in *Breed v. Jones* should apply retroactively. This Court is of the opinion that it should. The test as to whether a new constitutional standard in the criminal procedure area should apply retroactively is threefold: (a), what is the purpose to be served by the new standard; (b), what is the extent of the reliance by law enforcement authorities on the old standard and; (c), what is the effect on the administration of justice of a retroactive application of the new standard. *Adams v. Illinois*, 405 U.S. 278, 92 S.Ct. 916, 31 L.Ed.2d 202 (1971); *Stovall v. Denno*, 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1966); *Linkletter v. Walker*, 381 U.S. 618, 85 S.Ct. 1731, 14 L.Ed.2d 601 (1965).

■ The purpose of the court's new standard is to provide to juveniles the same protection against being placed twice in jeopardy for the same offense as adults receive. The right to be free from double jeopardy is a right as fundamental as any in the Bill of Rights. It goes directly to the heart of a fair trial. It is simply not fair to force a youth to disclose all of his evidence to the government in juvenile court and

then to have him attempt to defend against the same charges in adult court. It is also not fair to force anyone to suffer more than once for the same offense through the extreme physical, emotional and psychological strain effected by being a criminal defendant. All of these factors make conviction more likely in the second trial than in the first. The purpose of the new standard is to prevent this.

■ With respect to point (b) of the test, it cannot be said that law enforcement authorities have justifiably relied on the old standard. The question of whether the double jeopardy clause was applicable to juvenile proceedings has been argued and debated for years. The author of this opinion was for many years an Ohio Juvenile Court Judge and has continually argued to the other judges of that court and to committees of the Ohio General Assembly that it did apply and has made this argument known throughout the State of Ohio. Many other Ohio Juvenile Court judges shared his views. With the question one so strongly disputed, reliance on the old standard must be considered to have been treacherous and certainly not strong enough to require only a prospective application of the *Breed v. Jones* decision.

Finally, the effect of applying *Breed v. Jones* retroactively on the administration of justice will be relatively small. Since only juveniles who were first found to be delinquent and who were then bound over for trial as an adult will be affected, the number will not be great. The Ohio Statutes and Juvenile Rule did not mandate adjudication of delinquency before bindover, and many juvenile court judges bound over before commencing an adjudicatory hearing. It certainly will not force prison officials to open the doors of their prisons and set massive numbers of people free. Any juvenile who has recently been found delinquent and bound over, but not yet tried, can simply be remanded to the juvenile court for further proceedings. That would neither affect a large number of people nor be particularly disruptive of the administration of justice.

For all of the reasons set forth above, it appears to this Court that the new standard set forth in *Breed v. Jones* is well suited to retroactive application and is of such great importance that it deserves nothing less.

For the reasons stated herein, good cause therefore appearing, it is

Ordered that petitioner's motion for reconsideration should be and hereby is granted and the Court will not require that petitioner exhaust his state court remedies with respect to the issue of double jeopardy, and it is

Further ordered that the petitioner's motion to grant the writ of habeas corpus should be and hereby is granted, and it is

Further ordered that petitioner's adult state court conviction should be and hereby is vacated, and that the writ of habeas corpus will issue sixty (60) days from the date this order is filed and the petitioner be released from custody, unless state officials perfect an appeal from this order according to law, and it is

Further ordered that if state officials perfect an appeal from this decision and order, no writ of habeas corpus shall issue, and it is

Further ordered that should state officials appeal the decision and order herein, no bond will be set, and petitioner will not be released pending the outcome of the appeal.