[No. 45494. En Banc. November 16, 1978.]

*In the Matter of the Personal Restraint of*
KEVIN ALLEN FARNEY, *Petitioner.*

*Jean Rietschel* and *John Midgley* of *Institutional Legal Services,* for petitioner.

*Christopher T. Bayley, Prosecuting Attorney,* and *Betsy R. Hollingsworth, Deputy,* for respondent.

BRACHTENBACH, J.—Petitioner, alleging that he has been subjected to double jeopardy, presents a personal restraint petition seeking vacation of a superior court conviction and consequent release from custody. The heart of the claim of double jeopardy is that petitioner was subjected to an adjudicatory proceeding in juvenile court and subsequently charged and sentenced in superior court for the same offense. We hold that there was double jeopardy and grant the requested relief.

Two issues are presented. First, did jeopardy attach in the juvenile court proceeding? Second, if jeopardy did attach is a controlling United States Supreme Court case, *Breed v. Jones,* 421 U.S. 519, 44 L. Ed. 2d 346, 95 S. Ct. 1779 (1975), decided after these proceedings had occurred, to be retroactively applied.

To determine whether jeopardy attached in juvenile court we need to examine the procedural steps and substantive result of those proceedings.

At age 17, petitioner was charged with burglary and became the subject of a petition in juvenile court alleging that he was a delinquent under the then RCW 13.04.010. The day after the petition was filed, petitioner and his mother appeared in juvenile court. The charge was amended from burglary to breaking and entering. Petitioner, apparently with his mother's approval, filed a written answer stating (1) he wished to remain silent, (2) he did not wish an attorney, and (3) he admitted the charge against him.

While there is no verbatim report of the only hearing held in juvenile court, it appears that the petitioner, his mother, and a probation worker were sworn and examined. The results of the hearing, however, are plainly found in the court's order, entered at the conclusion of the hearing: (1) the allegations of the petition alleging delinquency are essentially correct, *i.e.*, it follows that petitioner had committed the offense charged, and (2) he therefore was a delinquent child. The court then entered the following order: "Jurisdiction declined, suspended on condition of good behavior, obeying law & being in school fulltime and/or employed."

Thus petitioner was to be transferred to superior court for trial as an adult unless he complied with the conditions of the suspension of juvenile jurisdiction. We do not comment upon the propriety of that order.

Despite the juvenile court order, petitioner, 2 months later, was charged in superior court with burglary based upon the same incident which gave rise to the juvenile court proceedings. After a guilty plea, petitioner was given a suspended sentence. Apparently petitioner violated the terms of his suspended sentence and has been incarcerated more than 7 years.

The double jeopardy clause of the Fifth Amendment controls state proceedings. *Benton v. Maryland,* 395 U.S. 784, 23 L. Ed. 2d 707, 89 S. Ct. 2056 (1969).

■ This case is controlled by the decision and rationale of *Breed v. Jones,* 421 U.S. 519, 44 L. Ed. 2d 346, 95 S. Ct.

1779 (1975). The court said at page 528: "Jeopardy denotes risk. In the constitutional sense, jeopardy describes the risk that is traditionally associated with a criminal prosecution." At page 530: "[I]n terms of potential consequences, there is little to distinguish an adjudicatory [juvenile] hearing such as was held in this case from a traditional criminal prosecution." At page 531, the court concluded that juvenile "was put in jeopardy at the adjudicatory hearing. Jeopardy attached when respondent was 'put to trial before the trier of the facts,' . . . that is, when the Juvenile Court, as the trier of the facts, began to hear evidence."

Placing the facts of this case against the principles of *Breed,* we conclude that jeopardy attached in the juvenile court proceedings. The result of the juvenile court hearing precludes any other conclusion. Petitioner admitted the crime, he was adjudicated a delinquent child, and restrictions were placed upon his liberty. The burdens and stigma of a full prosecution were imposed. The State argues that the juvenile court proceeding was merely a declination determination. Arguably that is what the court intended but, taking the order as a whole, it is apparent that the court went far beyond the single question of declination. Petitioner admitted that he had committed a felony, as the result of which he was adjudged a delinquent and restrictions were placed upon him. Jeopardy attached, precluding a subsequent prosecution for the same offense in superior court.

The second issue is whether the rule of *Breed* is to be applied retroactively since the proceedings in this case took place prior to that decision. Again the result is determined by a United States Supreme Court case, *Robinson v. Neil,* 409 U.S. 505, 35 L. Ed. 2d 29, 93 S. Ct. 876 (1973). In that case, the court drew the distinction between a constitutional prohibition against a second trial and procedural rights governing the conduct of a trial. *See* Beytagh, *Ten Years of Non–Retroactivity: A Critique and a Proposal,* 61 Va. L. Rev. 1557, 1585 (1975). We read *Robinson* to mean

that when a positive constitutional right, such as the prohibition against placing a defendant in double jeopardy, is violated, the controlling United States Supreme Court decision is retroactively applied. We so hold. *Accord, Holt v. Black,* 550 F.2d 1061 (6th Cir.), *cert. denied,* 432 U.S. 910 (1977); *In re Bryan,* 16 Cal. 3d 782, 548 P.2d 693, 129 Cal. Rptr. 293 (1976); *Brenson v. Havener,* 403 F. Supp. 221 (N.D. Ohio 1975).

Petitioner's superior court conviction is vacated and he is to be released from custody.

ROSELLINI, HAMILTON, STAFFORD, UTTER, HOROWITZ, and HICKS, JJ., concur.

DOLLIVER, J. (dissenting)—Without a further record, we may speculate endlessly as to the meaning to be attached to certain words and phrases contained in the preliminary order signed by the trial judge at the end of petitioner's hearing in juvenile court. We may continue this speculation as to what actually occurred at the hearing. None of this is of value in deciding this case. The trial court did, however, clearly, legibly and specifically state on the face of the order "Jurisdiction declined". Once these words had been written and the court's signature appended everything else became without force.

However inelegantly it may have been done, the trial court did decline jurisdiction. Once this was done, no jeopardy attached. I would deny the petition.

WRIGHT, C.J. (concurring in the dissent)—I concur in the view of Mr. Justice Dolliver. The words "Jurisdiction declined" were controlling and terminated the jurisdiction of the juvenile court. Anything else said was a nullity as the juvenile court was thereafter without jurisdiction.

It is fundamental that jeopardy cannot attach except by virtue of proceedings in a court of competent jurisdiction. We said in *State v. Williams,* 57 Wn.2d 231, 356 P.2d 99 (1960), at page 232:

In order for a plea of double jeopardy to be invoked, it is incumbent upon a defendant to show that he has been previously placed on trial *before a court of competent jurisdiction* upon an indictment or information for the same offense.

(Italics mine.)

Without in anywise expressing any criticism of the trial judge, I would suggest it is better practice to form the order differently than was done here. After a decline of jurisdiction, the attaching of conditions, if any, should be left to the action of the superior court, for the reasons stated herein.