[No. 8125–0–I.   Division One.   September 22, 1980.]

*In the Matter of the Personal Restraint of*
Ross Martin Gilbert, *Petitioner.*

*Lewis Nomura* of *Seattle–King County Public Defender Association* and *Robert L. Love,* for petitioner (appointed counsel for appeal).

*Norm Maleng, Prosecuting Attorney,* and *J. Robin Hunt, Deputy,* for respondent.

Dore, J.—Petitioner collaterally attacks his conviction for second degree murder.

Issue
Should the holding of *State v. Rogers,* 83 Wn.2d 553, 520

P.2d 159, *cert. denied,* 419 U.S. 1053, 42 L. Ed. 2d 650, 95 S. Ct. 633 (1974), invalidating RCW 9.41.030,[1] be applied retroactively on a personal restraint petition?

## PROCEDURE

Petitioner was convicted of second degree murder in September 1969. The jury made a special finding that at the time the offense was committed, he was armed with a deadly weapon. He was sentenced to a term of 20 years of confinement.

This court affirmed petitioner's conviction. *State v. Gilbert,* 3 Wn. App. 491, 475 P.2d 797 (1970). The Supreme Court denied review. *State v. Gilbert,* 78 Wn.2d 996 (1970). A personal restraint petition dated October 31, 1979, requested petitioner's release from prison.

## DECISION

ISSUE: *Rogers* should be retroactively applied.

In *Mullaney v. Wilbur,* 421 U.S. 684, 44 L. Ed. 2d 508, 95 S. Ct. 1881 (1975), the United States Supreme Court held that the state has the burden of establishing, beyond a reasonable doubt, all elements of the criminal charge before an accused may be convicted. The court rejected the state court's determination that the prosecution could rely on a "presumption of implied malice" and require the defendant to prove that he had acted in the heat of passion on sudden provocation in order to successfully reduce the charge of murder to manslaughter.

In *State v. Rogers, supra,* our Supreme Court held that RCW 9.41.030[2] was an unconstitutional intrusion on

---

[1]RCW 9.41.030:

"Being armed prima facie evidence of intent. In the trial of a person for committing or attempting to commit a crime of violence, the fact that he was armed with a pistol and had no license to carry the same shall be prima facie evidence of his intention to commit said crime of violence."

[2]See footnote 1.

defendant's Fifth and Fourteenth Amendment rights. The following jury instruction, based on that statute, was held improper:

> You are instructed that in the trial of a person for committing or attempting to commit a crime of violence, the fact that he was armed with a pistol and had no license to carry the same *shall be prima facie evidence of his intention* to commit said crime of violence. The presumption thus created is not binding upon you, but should be given only such weight as it seems to you to merit. This presumption permits, but in no way directs, you to convict the accused, and must be considered by you in light of the presumption of innocence which arises upon a plea of not guilty and accompanies the accused throughout the trial until overcome by evidence which convinces you of the accused's guilt beyond a reasonable doubt.

(Italics ours.) *State v. Rogers, supra* at 555. The court reasoned that the presumed fact (specific intent to commit murder) did not follow beyond a reasonable doubt from the proven fact (armed with an unlicensed handgun).

The identical jury instruction as that set forth above, and invalidated in *Rogers,* was read to the jury in the subject case. *State v. Gilbert, supra* at 492. Both *Rogers* and *Mullaney* were handed down subsequent to Gilbert's appeal. This court rested its decision to affirm Gilbert's conviction in part on *State v. Thomas,* 63 Wn.2d 59, 385 P.2d 532 (1963), which was overruled by *State v. Rogers, supra* at 556. The question as to the retroactivity of *Rogers* and *Mullaney* still remains, which we must resolve.

■■ The rule of *Mullaney* is to be given full retroactive effect. In *Hankerson v. North Carolina,* 432 U.S. 233, 243, 53 L. Ed. 2d 306, 316, 97 S. Ct. 2339 (1977), it was held

> [W]e have never deviated from the rule stated in *Ivan V.* [*Ivan V. v. New York,* 407 U.S. 203, 32 L. Ed. 2d 659, 92 S. Ct. 1951 (1972)] that "'[w]here the *major* purpose of new constitutional doctrine is to overcome an aspect of the criminal trial that *substantially* impairs its truth–finding function and so raises *serious* questions about the

accuracy of guilty verdicts in past trials, the new rule [is] given complete retroactive effect.'" 407 U. S., at 204. (Italics ours.)

In *Williams v. United States,* 401 U.S. 646, 28 L. Ed. 2d 388, 91 S. Ct. 1148 (1971), the court rejected the contention that the application of constitutional doctrines differed when the courts were confronted with collateral, as opposed to direct, appeals.[3] In any event, the defendant in *Mullaney* was before that court as a habeas corpus petitioner.

Retroactivity of a federal constitutional rule which would determine the validity of a personal restraint petition was discussed in *In re Farney,* 91 Wn.2d 72, 583 P.2d 1210 (1978). The court found the constitutional rule, decided subsequent to the proceedings in that case, was applicable. This was grounded on *Robinson v. Neil,* 409 U.S. 505, 35 L. Ed. 2d 29, 93 S. Ct. 876 (1973).

> We read *Robinson* to mean that when a positive constitutional right, such as the prohibition against placing a defendant in double jeopardy, is violated, the controlling United States Supreme Court decision is retroactively applied.

*In re Farney, supra* at 75–76.

The petitioner in the subject case contends that the error made at his trial violated one of his "positive constitutional rights." We agree. At stake in the subject case is the possibility that, without the mandatory presumption raised by RCW 9.41.030, the State would have been unable to prove beyond a reasonable doubt the *intent* of the defendant to commit the crime. The general intent to commit murder is one of the essential elements of the offense which the State must prove beyond a reasonable doubt before an accused may be convicted of that crime. RCW 9A.32.050(1)(a).[4]

---

[3]In a separate opinion, however, Justice Powell urged that the retroactivity rule should apply only to cases on direct review. "[W]hereas cases on collateral review ordinarily would be considered in light of the rule as it stood when the conviction became final." (Footnote omitted.) *Hankerson v. North Carolina, supra* at 248 (Powell, J., concurring).

[4]RCW 9A.32.050(1)(a) reads as follows:

The use of the mandatory presumption therefore "raises *serious* questions about the accuracy of [the] guilty verdicts". *Hankerson v. North Carolina, supra* at 243. This presumption goes to the very heart of a defendant's Fifth and Fourteenth Amendment rights, *State v. Rogers, supra* at 556. We hold that a "positive constitutional right" of the defendant is at issue and the controlling case of *Mullaney v. Wilbur, supra,* should be applied retroactively.

The retroactive application of *State v. Roberts,* 88 Wn.2d 337, 562 P.2d 1259 (1977), which found a burden–shifting jury instruction to be constitutionally infirm, was discussed in *In re Myers,* 91 Wn.2d 120, 587 P.2d 532 (1978), *cert. denied sub nom. Myers v. Washington,* 442 U.S. 912, 61 L. Ed. 2d 278, 99 S. Ct. 2828 (1979). In *Myers* the court followed our state procedural rule and refused to grant the personal restraint petition. It found that *Roberts* did not have to be retroactively applied on collateral attack inasmuch as the petitioner had failed to make the objection on his direct appeal to the instructions given at his trial. It relied, in part, on *Hankerson v. North Carolina, supra,* which stated at page 244 n.8, quoted by *Myers, supra* at page 125,

> If the validity of such burden–shifting presumptions was as well settled in the States that have them as respondent asserts, then it is unlikely that prior to *Mullaney* many defense lawyers made appropriate objections to jury instructions incorporating those presumptions. . . . The States, if they wish, may be able to insulate past

---

"Murder in the second degree. (1) A person is guilty of murder in the second degree when:

(a) *With intent to cause the death* of another person but without premeditation, he causes the death of such person or of a third person; . . ."

The predecessor statute read as follows, in pertinent part:

"*Murder in the Second Degree.*

"The killing of a human being, unless it is excusable or justifiable, is murder in the second degree when—

"1. Committed *with a design to effect the death* of the person killed or of another, but without premeditation; . . ." (Some italics ours.) Laws of 1909, ch. 249, § 141. (RCW 9A.32.050(1)(a) replaced this statute. Laws of 1975, 1st Ex. Sess., ch. 260, § 9A.32.050.)

convictions by enforcing the normal and valid rule that failure to object to a jury instruction is a waiver of any claim of error.

The court noted that "[e]xecutive clemency and the parole system are available for those cases that are particularly deserving." *Myers,* at 125.

The holding in *Myers* was based on the petitioner's failure to object to the instructions on direct appeal. "Accordingly, we hold that the general rule—*i.e.,* the *failure to identify errors at trial or prosecute them on appeal* precludes reliance thereon in subsequent proceedings—applies to alleged errors raised for the first time on collateral attack." (Italics ours.) *In re Myers, supra* at 125–26. This rationale was apparently employed in *State v. Davis,* 25 Wn. App. 134, 141, 605 P.2d 359 (1980), where the court refused to apply *Roberts* retroactively.

The case at bar does not suffer from the *Myers* infirmity. Petitioner Gilbert *did object* to the instruction, based on RCW 9.41.030, which raised a presumption of specific intent from the fact of his having been armed with an unlicensed handgun. This objection was raised on his direct appeal to this court, even though his case predated the *Rogers* opinion. *State v. Gilbert,* 3 Wn. App. 491, 492, 475 P.2d 797 (1970).

We conclude that the rationale of *Rogers* shall be retroactively applied to the subject case, and the petitioner's personal restraint writ be granted.

## CONCLUSION

We order that the personal restraint petition of Ross Martin Gilbert is granted subject to the following conditions:

1. That the State retry the defendant as charged within 60 days after issuance of a writ of mandate from this court (RAP 12.5).

2. That the trial court determine the propriety of permitting the defendant to post bail and secure his freedom pending his retrial.

If the State fails to retry the defendant within the time frame as provided here, the charges against the defendant will be dismissed with prejudice.

We remand the subject case to the trial court for procedures consistent with this opinion.

RINGOLD, J., concurs.

SWANSON, J. (dissenting)—I agree with the majority that the jury instruction at issue here is unconstitutional. I also agree, although reluctantly, that the holding in *Mullaney v. Wilbur*, 421 U.S. 684, 44 L. Ed. 2d 508, 95 S. Ct. 1881 (1975), is retroactively applicable to this case. I do not agree, however, that the personal restraint petition in this case should be granted, because the record clearly shows that the error in giving the jury instruction here was harmless. For that reason, I respectfully dissent from the majority's opinion.

*Mullaney* held that Maine's presumption of implied malice, which required a defendant to prove he acted in the heat of passion on sudden provocation, violated the due process clause of the federal constitution because it removed from the prosecution the burden of proving each element of the crime beyond a reasonable doubt. *Mullaney v. Wilbur, supra. See In re Winship*, 397 U.S. 358, 25 L. Ed. 2d 368, 90 S. Ct. 1068 (1970). *Mullaney*, however, does not render unconstitutional all presumptions in the criminal law.

> It permits the use of an otherwise valid presumption, so long as the ultimate burden of persuasion as to the issue remains with the prosecution and the defendant is at most only required to produce some evidence, from whatever source, in opposition to it.

*State v. Roberts*, 88 Wn.2d 337, 341, 562 P.2d 1259 (1977). The jury instruction in this case is unconstitutional under *Mullaney* because it was not expressly limited to placing an initial burden of producing evidence upon the defendant.

*See State v. Roberts, supra* at 342.[5]

In *Hankerson v. North Carolina,* 432 U.S. 233, 53 L. Ed. 2d 306, 97 S. Ct. 2339 (1977), the Supreme Court held the *Mullaney* rule was retroactive.[6] In view of the majority of the United States Supreme Court, a new constitutional doctrine held to be retroactive is equally retroactive in collateral proceedings and direct appeals. *Williams v. United States,* 401 U.S. 646, 28 L. Ed. 2d 388, 91 S. Ct. 1148 (1971). Therefore, the *Mullaney* rule is retroactively applicable to personal restraint petition cases such as that with which we are here concerned.

Although I concede the force of Supreme Court precedent, I deplore this result. I would generally limit retroactive application of new constitutional doctrines to direct appeals only. In the words of Justice Powell, such a limitation

---

[5]The majority obscures the distinction between the holdings in *Mullaney* and *State v. Rogers,* 83 Wn.2d 553, 520 P.2d 159, *cert. denied,* 419 U.S. 1053, 42 L. Ed. 2d 650, 95 S. Ct. 633 (1974). *Rogers* predated *Mullaney. Rogers* held that the application of the presumption contained in RCW 9.41.030 was unconstitutional under the facts of that case. The court made a similar holding in a companion case to *Rogers, State v. Odom,* 83 Wn.2d 541, 520 P.2d 152 (1974). The *Rogers* and *Odom* decisions were based upon the court's findings that the State did not show beyond a reasonable doubt that the presumed fact, specific intent to commit murder, followed the proven fact, being armed with an unlicensed weapon. The *Rogers–Odom* cases and *Mullaney* therefore present two distinct due process tests under which an evidentiary presumption is to be scrutinized. *State v. Roberts, supra* at 340–41.

[6]The usual test for retroactive application of a new constitutional doctrine is whether the doctrine's "major purpose . . . is to overcome an aspect of the criminal trial that substantially impairs its truth–finding function and so raises serious questions about the accuracy of guilty verdicts in past trials . . ." *Hankerson v. North Carolina, supra* at 241; *Williams v. United States,* 401 U.S. 646, 653, 28 L. Ed. 2d 388, 91 S. Ct. 1148 (1971).

The majority confuses this test with one enunciated in *In re Farney,* 91 Wn.2d 72, 583 P.2d 1210 (1978), and based on *Robinson v. Neil,* 409 U.S. 505, 35 L. Ed. 2d 29, 93 S. Ct. 876 (1973). *Robinson* made clear that its holding was limited to new constitutional doctrines that are unrelated to the truth–finding process of a trial and that are, therefore, not susceptible to analysis under the test employed in *Williams* and *Hankerson.* Consequently, the *Robinson* and *Farney* holdings are not applicable to this case.

is closer to the ideal of principled, evenhanded judicial review than is the traditional retroactivity doctrine. At the same time it is more attuned to the historical limitations on habeas corpus . . . [the federal equivalent of our personal restraint petition], and to the importance of finality in a rational system of justice.

(Citation omitted.) *Hankerson v. North Carolina, supra* at 248 (Powell, J., concurring). I agree with Justice Harlan that it is "a matter of fundamental import that there be a visible end to the litigable aspect of the criminal process." *Mackey v. United States,* 401 U.S. 667, 690, 28 L. Ed. 2d 404, 91 S. Ct. 1160 (1971) (Harlan, J., dissenting).

The position I have taken here was strongly endorsed by our Supreme Court in *In re Myers,* 91 Wn.2d 120, 587 P.2d 532 (1978). The *Myers* court stated at pages 123–24:

Assuming the challenged instructions in the present case are defective under *Roberts* and *Mullaney,* the question is whether this new rule should be applied retroactively to this collateral review proceeding. The importance of finality in a rational system of justice leads us to conclude that it should not.

The *Myers* court then related important policy reasons for this conclusion:

When a trial has been held, a conviction affirmed on appeal, and a period of time thereafter elapses, we believe the negative effect on the administration of justice outweighs the interest of a defendant in having his guilt redetermined in accordance with subsequent decisions of this court or the United States Supreme Court.

Evidence necessary for retrial may no longer be extant. Witnesses may have moved or died and memories certainly will have dimmed. Further investigation, difficult at best, may well be impossible. Such factors could, and in this case probably would, make effective retrial of Myers impossible. If another trial is to be conducted in this case with the consequent burdens on the judicial and prosecutorial resources it undoubtedly would be less reliable than the first.

*In re Myers, supra* at 124–25. Because of the *Hankerson* opinion, however, the *Myers* court was able to deny the

personal restraint petition only on the ground that Myers had failed to object at trial to the jury instruction at issue.

Comparison of *Myers* with the instant case points out the inadequacy of the United States Supreme Court's standard for retroactive application of a new constitutional doctrine in collateral review proceedings. Myers was tried in 1959. At his trial, a burden–shifting instruction was given, the validity of which was so well settled that it was not determined to be invalid until the *Mullaney* case in 1975. Myers' personal restraint petition was denied in 1978 solely because his attorney had not had the prescience to anticipate by 16 years a Supreme Court opinion that would declare that instruction unconstitutional. Gilbert, on the other hand, had the good fortune to be represented by an attorney who anticipated the *Mullaney* decision by 6 years and did except to that instruction. As a result, Gilbert's petition will be granted. This is a very slight distinction upon which to base the granting or denial of a personal restraint petition, especially because the policy reasons against granting the petitions apply with equal force to both cases.

The majority, however, need not have reached this unfortunate result. In *State v. Rogers,* 83 Wn.2d 553, 520 P.2d 159, *cert. denied,* 419 U.S. 1053, 42 L. Ed. 2d 650, 95 S. Ct. 633 (1974), where the defendant specifically objected to the same instruction as the offending instruction in the instant case, the court said at page 557:

> An accused cannot avail himself of error as a ground for reversal where the error has not been prejudicial to him. *State v. White,* 72 Wn.2d 524, 433 P.2d 682 (1967). Error cannot be regarded as harmful so as to require reversal unless, within reasonable probabilities, had the error not occurred, the result might have been materially more favorable to the one complaining of it. . . . We do not believe the average juror would have found the prosecutor's case significantly less persuasive had the jury not been instructed on the statutory presumption of the defendant's specific intent to kill. The error was harmless.

(Citation omitted.) I have viewed again the trial record in the instant case. The record shows that, as in *Rogers,* the error in giving the jury instruction was harmless.

In the instant case, the evidence of guilt was so overwhelming the defendant assigned no error to the sufficiency of the evidence to support the conviction in his direct appeal. There was no claim of self-defense, or any defense, to defendant's criminal act. The facts as a jury could have found them are these: The petitioner Gilbert, and others, including one John LaBeur, contacted one Edward Earl Butler for the purpose of collecting a $20 debt LaBeur claimed Butler owed him. Also, Gilbert intended to buy some marijuana. After arriving at Butler's residence, they went to the door. One of the occupants answered and attempted to get Gilbert and LaBeur to leave. They obtained entrance but were told that no marijuana was available for about 3 hours. Gilbert and LaBeur returned to their car, and, as it was driving away, Gilbert told the driver to stop because he wanted to go back and talk to Butler. LaBeur followed Gilbert to the house and a further conversation occurred between Gilbert and Butler. Gilbert stared at Butler for a few seconds, placed his hand inside his belt, drew out a gun, and shot Butler in the head, from which wound Butler soon thereafter expired. After returning to the car, Gilbert made the statement that he had shot Butler and that he thought he had killed him.

I can say with confidence that the giving of the instruction complained of did not make the State's case significantly less persuasive than it would have been had the jury not been so instructed. To require the State to retry Gilbert within 60 days for a murder that occurred more than 10

years ago, or set him free and dismiss the charge with prejudice, places too great a burden on the State. I therefore dissent from the conclusions reached by the majority.