Daniel BAYNOR, #9764

v.

WARDEN, MARYLAND HOUSE OF CORRECTION, et al.
(CASE A)

No. B-74-287, Case A.

United States District Court,
D. Maryland.

March 14, 1975.

---

* I make no finding as to the civil tax liability of the defendant.

Luther Blackiston, Prisoner Assistance Project, Legal Aid Bureau, Inc., Baltimore, Md., for petitioner.

Alexander L. Cummings, Asst. Atty. Gen., of Maryland, Baltimore, Md., for respondents.

## MEMORANDUM AND ORDER

BLAIR, District Judge.

Petitioner is now incarcerated in the Maryland House of Correction under a sentence of life imprisonment on a conviction of first-degree murder and a twenty-year sentence for attempted robbery with a dangerous weapon, the latter sentence to be served consecutively to the life sentence. Petitioner was arrested on December 28, 1963, and was originally convicted of both offenses on January 26, 1965 in the Criminal Court of Baltimore City before a judge sitting without a jury. At that time he was sentenced to life imprisonment under the murder conviction and to a five-year concurrent term for attempted robbery. Petitioner appealed his convictions, and his case was vacated and remanded in accordance with the decision of the Court of Appeals of Maryland in Schowgurow v. State, 240 Md. 121, 213 A.2d 475 (1965).

After petitioner's indictment was dismissed, he was reindicted, tried, and convicted of the same offenses at a trial on October 14, 1966, in the Criminal Court of Baltimore City, again before a judge sitting without a jury. On January 25, 1967, petitioner was sentenced to the terms of imprisonment that he is now serving. Petitioner again appealed to the Court of Special Appeals of Maryland, which affirmed the judgments and

convictions. Baynor v. State, No. 209 (Md.Ct.Spec.App., May 13, 1968). Certiorari was denied by the Court of Appeals of Maryland on December 11, 1968.

Petitioner has now filed two separate petitions for a writ of habeas corpus in this court. This petition requests "that his present sentence be recomputed so that he is given credit for the time served on his first sentence from December 28, 1963 to January 25, 1967, a total of 1124 days." He also requests that his parole eligibility date "be determined upon a beginning date for his sentence of December 28, 1963."

Petitioner bases his claim on the retroactive application of the Supreme Court's decision in North Carolina v. Pearce, 395 U.S. 711, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969), which was decided on June 23, 1969. In *Pearce*, the Court made two separate rulings. First, it held that after a defendant has obtained a new trial from the reversal of a conviction, "the constitutional guarantee against multiple punishments for the same offense absolutely requires that punishment already exacted must be fully 'credited' in imposing sentence upon a new conviction for the same offense." 395 U.S. at 718–19, 89 S.Ct. at 2077. Second, the Court held that while neither the double jeopardy provision nor the Equal Protection Clause imposes an absolute bar to a more severe sentence upon reconviction, *id.* at 723, 89 S.Ct. at 2080, due process of law does require that "vindictiveness against a defendant for having successfully attacked his first conviction must play no part in the sentence he receives after a new trial," and that "a defendant be freed of apprehension of such a retaliatory motivation on the part of the sentencing judge." *Id.* at 725, 89 S.Ct. at 2080. Hence, to assure the absence of such a motivation, the Court formulated the constitutional rule that the sentencing judge must state his reasons for the imposition of the more severe sentence. *Id.* at 726, 89 S.Ct. 2072.

The second holding of *Pearce* has been held not to be retroactive. Michigan v. Payne, 412 U.S. 47, 93 S.Ct. 1966, 36 L.Ed.2d 736 (1973). Hence, that portion of *Pearce* is not at issue in this case, since petitioner was sentenced before June 23, 1969. However, the Supreme Court has never ruled on the retroactive effect of the first holding in *Pearce* based on the double jeopardy clause. The Fifth Circuit has expressly ruled that the first holding in *Pearce* is retroactive. Allen v. Henderson, 434 F.2d 26 (5th Cir. 1970). Petitioner argues that the Fourth Circuit has implicitly so ruled in Wilson v. North Carolina, 438 F.2d 284 (4th Cir. 1971).

### I.

■ The first question for this court to decide is whether petitioner is required to further exhaust his state remedies. Petitioner concedes that he has never raised this issue either on direct appeal of his conviction or under the Maryland Post Conviction Procedure Act. He contends, however, that further exhaustion would be futile because the Court of Special Appeals of Maryland has ruled that North Carolina v. Pearce is not retroactive. Craig v. Warden, No. 39 (Md.Ct.Spec.App., June 26, 1972). Hence, petitioner argues, any available state remedy would be ineffective, and exhaustion should therefore not be required. *See* Evans v. Cunningham, 335 F.2d 491 (4th Cir. 1964); Hayes v. Boslow, 336 F.2d 31 (4th Cir. 1964), cert. denied, 386 U.S. 1039, 87 S.Ct. 1496, 18 L.Ed.2d 607 (1967); Rowe v. Peyton, 383 F.2d 709 (4th Cir. 1967).

In the *Craig* case, the circumstances were essentially the same as the instant case. Craig was first convicted and sentenced to death on January 31, 1957. The conviction was reversed and remanded for retrial. He was again convicted, but sentenced only to life imprisonment on February 21, 1958. Craig argued based on *Pearce* that he should have been credited with the time served under the first sentence for purposes of ascertaining prison privileges as well as determining parole rights and status. The lower court rejected this argument.

The Court of Special Appeals affirmed based on a construction of the relevant Maryland statute, 4A Annotated Code of Maryland, art. 41, § 122(b) (Supp. 1973), which provides as follows:

> No person who has been sentenced to life imprisonment shall be eligible for parole consideration until he shall have served in confinement fifteen years. . . .

The Court of Special Appeals construed "served in confinement" to mean commencing on the second sentencing date: February 21, 1958. The Court further held *Pearce* to be not retroactive. Hence, Craig was not entitled to credit on his parole time. Craig v. Warden, No. 39 (Md.Ct.Spec.App., June 26, 1972). *See also* Dennis v. Warden, 12 Md.App. 512, 280 A.2d 53 (1971).

The Court of Special Appeals of Maryland has therefore recently ruled against the very contention that petitioner asserts here. Exhaustion of state remedies was excused on almost identical grounds in Mohr v. Jordan, 370 F. Supp. 1149, 1152, 1154 (D.Md.1974) (Harvey, J.), aff'd, No. 74–1496 (4th Cir., July 31, 1974), i. e., that exhaustion would be futile. *Cf.* Ralph v. Warden, 438 F.2d 786 (4th Cir. 1970).

Further, this case appears to fall within the ambit of Wilson v. North Carolina, 438 F.2d 284 (4th Cir. 1971), decided on February 24, 1971. Craig v. Warden was decided June 26, 1972. Hence, it is reasonable to assume that the Court of Special Appeals considered *Wilson* at that time and reasonable also to assume that if petitioner were required to file further proceedings under the Maryland Post Conviction Procedure Act, the Court of Special Appeals of Maryland would reach the same result as in *Craig.*

As it would therefore be futile for petitioner to seek relief in the state courts as to his claim, this court will consider the claim on its merits without requir-

ing the exhaustion of state remedies. Mohr v. Jordan, *supra,* 370 F.Supp. at 1155.

II.

As to the merits of petitioner's claim, the first question is whether the double jeopardy holding in North Carolina v. Pearce is retroactive. In Wilson v. North Carolina, 438 F.2d 284 (4th Cir. 1971), this aspect of *Pearce* was apparently applied retroactively. Shortly after *Wilson,* the Fourth Circuit decided James v. Copinger, 441 F.2d 23 (4th Cir. 1971), in which the court expressly held the second holding of *Pearce* retroactive. The Supreme Court has subsequently held otherwise as to that portion of *Pearce.* Michigan v. Payne, 412 U.S. 47, 93 S.Ct. 1966, 36 L.Ed.2d 736 (1973). It is not altogether clear whether or not the implicit *Wilson* holding of retroactivity was influenced by the Fourth Circuit's belief that all of *Pearce* was retroactive. Since the Fourth Circuit has never expressly stated its views on this issue, this court will consider anew the retroactivity of *Pearce*'s double jeopardy aspect.

██ In determining whether a new constitutional principle should be applied retroactively, the Supreme Court has, since Linkletter v. Walker, 381 U.S. 618, 85 S.Ct. 1731, 14 L.Ed.2d 601 (1965), considered the following three factors: (1) the purpose to be served by the new standards; (2) the extent of reliance by law enforcement authorities on the old standards; and (3) the effect on the administration of justice of a retroactive application of the new standards. Stovall v. Denno, 388 U.S. 293, 297, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967). The latter two factors, however, have controlling significance "only when the purpose of the rule in question did not clearly favor either retroactivity or prospectivity." Desist v. United States, 394 U.S. 244, 251, 89 S.Ct. 1030, 1035, 22 L.Ed.2d 248 (1969).

It is doubtful, however, whether this three-pronged test is appropriate to determine the retroactivity of the double-jeopardy holding of *Pearce*. In Robinson v. Neil, 409 U.S. 505, 93 S.Ct. 876, 35 L.Ed.2d 29 (1973), the Supreme Court considered the retroactivity of Waller v. Florida, 397 U.S. 387, 90 S.Ct. 1184, 25 L.Ed.2d 435 (1970), in which the Court had held that the constitutional guarantee against double jeopardy precluded the recognition of the "dual sovereignty" doctrine with respect to separate state and municipal prosecutions. In *Robinson*, the Court refrained from applying the three-pronged test because the prohibition against being placed in double jeopardy was simply not susceptible to such analysis. 409 U.S. at 508, 93 S.Ct. 876. The three-pronged analysis evolved from cases enunciating new constitutional rules pertaining to procedural rights or to a particular mode of trial. *Id.* But guarantees "that do not relate to these procedural rules cannot, for retroactivity purposes, be lumped conveniently together in terms of analysis." *Id.*

The Court did not explicitly enunciate a new test to be applied in determining the retroactivity of a non-procedural constitutional rule such as the guarantee against double jeopardy. The opinion does suggest, however, that such non-procedural rules will presumptively be given retroactive effect. *See id.* at 509, 93 S.Ct. 876. But the Court made clear that the elements of reliance and prejudice to the state in the three-pronged test will not be wholly absent in determining the effect to be given to a new non-procedural constitutional rule.

The Court then contrasted Furman v. Georgia, 408 U.S. 238, 92 S.Ct. 2726, 33 L.Ed.2d 346 (1972), in which the Court had held in the situation there presented, imposition of the death penalty was not constitutionally permissible:

> In Furman v. Georgia, *supra*, our mandate was tailored so as to deny to the State only the authority to impose a punishment that we held unconstitutional, without the necessity of a redetermination of the factual question of whether the offense had in fact been committed. Thus, the prejudice to the State resulting from the necessity of an entirely new trial because of procedures newly found to be constitutionally defective, with the attendant difficulties of again assembling witnesses whose memories would of necessity be dimmer for the second trial than the first, was not present. That which was constitutionally invalid could be isolated and excised without requiring the State to begin the entire factfinding process anew.

409 U.S. at 509–10, 93 S.Ct. at 878. The Court has thus not hesitated to apply *Furman* retroactively without regard to the three-pronged test, *id.* at 508, 93 S.Ct. 876, since the new rule invalidating the death penalty does not, as a practical matter, cause prejudice to the State. Where there is practical prejudice to the State, however, the Court will consider the effect of the State's reliance upon the old rule. *See id.* at 510, 93 S.Ct. 876. While the Court felt that retroactive application of *Waller* would result in some practical prejudice to the States, it nevertheless considered the States' reliance on the old rule to be unjustified and therefore held *Waller* to be retroactive.

 The application of this analysis to the double jeopardy holding in *Pearce* thus becomes clear. *Pearce* holds that the constitutional guarantee against double jeopardy absolutely requires punishment exacted under a reversed conviction to be fully "credited" in imposing sentence upon the new conviction for the same offense. 395 U.S. at 718–19, 89 S.Ct. 2072. The new rule is clearly not procedural, having nothing to do with the use of evidence or with a particular mode of trial. It is rather a rule of substantive, fundamental constitutional law made mandatory on the states through

the Due Process Clause of the Fourteenth Amendment. Hence, it is presumptively retroactive. Application of *Pearce* retroactively will require no new trial owing to procedures newly found to be constitutionally defective, with the attendant difficulties of again assembling witnesses whose memories would of necessity be dimmer for the second trial than for the first. The State need only make administrative adjustments in shortening sentences to be served by a limited number of prisoners. Simply stated, retroactive application of *Pearce* will cause no practical prejudice to the State because "that which is constitutionally invalid [can] be isolated without requiring the State to begin the entire factfinding process anew." Robinson v. Neil, 409 U.S. 505, 510, 93 S.Ct. 876, 878, 35 L.Ed.2d 29 (1973). Therefore, this court holds that retroactive application of North Carolina v. Pearce, 395 U. S. 711, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969), is required. *Accord,* Allen v. Henderson, 434 F.2d 26 (5th Cir. 1970).

### III.

■ There remains the application of North Carolina v. Pearce to this case. The facts are almost identical to those in Wilson v. North Carolina, 438 F.2d 284 (4th Cir. 1971). In *Wilson,* the petitioner was convicted on July 20, 1963, and sentenced to life imprisonment. After a successful appeal, petitioner was reconvicted and again sentenced to life imprisonment. Under North Carolina law, the second sentence began to run after the dismissal of the appeal of his second conviction on November 3, 1965, and his date for parole eligibility would have been computed from that date. By statute, a prisoner serving a life sentence would be eligible for parole after ten years.

The Fourth Circuit held that *Pearce* required that petitioner be given credit for the time spent in prison under the first conviction toward his parole eligibility date. The Court stated:

. . . Denial of credit to Wilson for the time he spent in jail from the date of his first conviction until the affirmance of his second appeal is multiple punishment. Under *Pearce,* it must be fully credited to him insofar as possible as "punishment already exacted." Although it cannot be credited against his life sentence, which by its very nature is indefinite, it can be credited toward the ten years he must wait to be considered for parole. 438 F.2d at 286.

The *Wilson* case is squarely applicable to the case at bar. Under Maryland law, petitioner is not eligible for parole until he has served 15 years in confinement. 4A Annotated Code of Maryland, art. 41, § 122(b) (Supp.1973). While the Maryland courts pursuant to an amendment of the statute now give credit for time served under previous void sentences on sentences imposed subsequent to *Pearce, see* Bartholomey v. State, 267 Md. 175, 297 A.2d 696 (1972), those courts have not given *Pearce* retroactive effect, instead construing the statute as requiring the serving of 15 years from the date of the second sentence. Craig v. Warden, No. 39 (Md. Ct.Spec.App., June 26, 1972). Under *Wilson,* however, petitioner in this case is constitutionally entitled to credit toward his parole eligibility date for the time spent in jail between the imposition of his first and second life sentences, since North Carolina v. Pearce is to be given retroactive effect. But such time cannot be credited against the life sentence itself, since that sentence is indefinite by its very nature. Wilson v. North Carolina, *supra,* 438 F.2d at 286.

Petitioner is also constitutionally entitled to credit toward his parole eligibility date for time spent in jail subsequent to his initial arrest and before his first trial and conviction. Mohr v. Jordan, 370 F.Supp. 1149, 1155 (D.Md.1974), aff'd, No. 74–1496 (4th Cir., July 31, 1974); *cf.* Ham v. North Carolina, 471 F.2d 406 (4th Cir. 1973); Thompson v. Maryland, Civil No. B–74–106 (D.Md.,

July 11, 1974) (Memorandum Opinion at 2) (Blair, J.). Hence, in determining petitioner's parole eligibility date, he will be allowed credit for the time he spent in custody from December 28, 1963, the date of his initial arrest, until January 25, 1967, the date of his second conviction and sentence.[1] Again, however, the time spent in pre-trial detention cannot be credited against the indefinite life sentence itself. *Cf.* Wilson v. North Carolina, *supra,* 438 F.2d at 286.

While this court is following the Fourth Circuit's ruling in *Wilson* in holding that petitioner here is entiled to the credit he seeks, it should be noted that it is in no manner indicating when, if ever, parole should be granted. That decision lies exclusively within the discretion of the state parole board. This opinion deals only with the time in which petitioner is eligible to be *considered* for parole by the board.

Accordingly, it is this 14th day of March, 1975, by the United States District Court for the District of Maryland, ordered:

1. That insofar as the petitioner requests credit toward his parole eligibility date for time spent in jail from December 28, 1963 to January 25, 1967, the petition for habeas corpus be, and the same hereby is, granted.

2. That respondents adjust the administrative records of the Maryland Division of Correction and of the Maryland Board of Parole so that service of petitioner's sentence will commence on December 28, 1963 and so that the periods of time that petitioner spent in confinement before his first trial and between his first and second convictions will be included in computing petitioner's eligibility for parole.

---

1. If any of the portion of the time that petitioner spent in confinement between his arrest on the charges leading to the convictions in this case and his first trial is attributable to something other than the charges leading to his present conviction, such fact has not been brought to the attention of the court. If the defendant Division of Correctional Services makes any such claim, it should be promptly brought to the attention of the court.