UNITED STATES of America ex rel.
Lawrence WILLIAMS, Petitioner,

v.

Ernest MORRIS, Warden, Respondent.

UNITED STATES of America ex rel.
Oscar SOUTHALL, Petitioner,

v.

Thaddeus E. PINKNEY, Warden, Pontiac
Correctional Center, Respondent.

UNITED STATES of America ex rel.
Emanuel WILLIAMS, Petitioner,

v.

PEOPLE OF the STATE OF
ILLINOIS, Respondents.

Nos. 77 C 2402, 77 C 2184 and 77
C 1937.

United States District Court,
N. D. Illinois, E. D.

Jan. 4, 1978.

On Motion to Reconsider Jan. 27, 1978.

Lawrence Williams, pro se.

Oscar Southall, pro se.

Emanuel Williams, pro se.

William J. Scott, Atty. Gen. of Ill., Melbourne A. Noel, Asst. Atty. Gen., Chicago, Ill., Patrick J. Calihan, Asst. Atty. Gen., Chicago, Ill. (L. Williams and O. Southall cases), Michael B. Weinstein, Asst. Atty. Gen., Chicago, Ill. (E. Williams case) for respondents.

### MEMORANDUM OPINION
MARSHALL, District Judge.

In *United States ex rel. Baker v. Finkbeiner*, 551 F.2d 180 (7th Cir. 1977), the Court of Appeals for the Seventh Circuit held that the failure of the state prosecutor and trial judge to advise a state criminal defendant of a mandatory parole term which automatically attached to his sentence created a constitutional defect in his guilty plea and warranted habeas relief. Seizing upon this newly fashioned doctrine, three state prisoners seek writs of habeas corpus under 28 U.S.C. § 2254 because their guilty pleas were allegedly tainted by the same omission. In each case, the Illinois Attorney General has moved to dismiss the petitions on the ground that the petitioners have not exhausted their state remedies.

In *Baker*, the petitioner (the defendant in state court) agreed to plead guilty to criminal charges in exchange for the prosecutor's promise that he would recommend a specific sentence of imprisonment. Unbeknownst to the defendant, Illinois law required that a mandatory parole term be added to any term of imprisonment. Before accepting the plea, the trial judge informed the defendant of the statutory range of imprisonment for the pending charges and told the defendant that his sentence would conform to the plea agreement, but failed to mention the mandatory parole term. Neither the prosecutor nor defendant's attorney remedied this omission. Defendant was imprisoned, served his sentence, and was released on parole. After violating parole, he was reimprisoned for an additional term.

In *Baker* the court held that since the defendant was given a substantially more onerous sentence than he had been promised, his guilty plea had been unfairly induced in violation of the Due Process Clause of the Fourteenth Amendment. His guilty plea was involuntary since he lacked a full understanding of the consequences of his action. To remedy this constitutional violation, however, the court did not vacate the guilty plea. Vacating the plea would have permitted the state to reprosecute a defendant who had already performed his part of the bargain by serving his prison sentence. Instead, the court ordered the petitioner released from custody, thereby extinguishing only his undisclosed parole obligations.

Each petitioner here attempts to demonstrate that his case fits within the factual contours of *Baker* and requires habeas relief. However, all three petitioners admit that they have not invoked any state legal remedies, either by way of direct appeal, *coram nobis*, state habeas corpus, or post-conviction petitions. Federal courts are precluded from considering habeas petitions by state prisoners unless the applicant has exhausted his state remedies. 28 U.S.C. § 2254(b). But state remedies need only be exhausted where they are both adequate and available. *Preiser v. Rodriguez*, 411 U.S. 475, 493, 93 S.Ct. 1827, 36 L.Ed.2d 439 (1973). We believe it would be futile for petitioners to seek state court relief on their claims.

Illinois state courts have consistently refused to grant relief to criminal defendants who pleaded guilty prior to May 19, 1975

and who were not advised of the mandatory parole term. On that date, the Illinois Supreme Court overruled an earlier decision and held that Illinois Court Rule 402 required trial judges to admonish defendants who pleaded guilty that a period of mandatory parole attached to their sentences. *People v. Wills*, 61 Ill.2d 105, 330 N.E.2d 505 (1975). In a supplemental opinion, the court decided that the new requirement would apply only prospectively. 330 N.E.2d at 509. In the present cases, each petitioner pleaded guilty prior to May 19, 1975.[1] Therefore, they reap no benefit from the *Wills* opinion. The Illinois courts have so held, whether defendants have used direct appeals or habeas or post-conviction petitions.

■ In cases where defendants have filed direct appeals from their pre-*Wills* guilty pleas to challenge the trial court's failure to admonish them about the parole provisions, every Illinois Appellate Court has denied relief.[2] *People v. Deckard*, 32 Ill.App.3d 497, 336 N.E.2d 614 (1st Dist. 1975); *People v. Tate*, 37 Ill.App.3d 358, 346 N.E.2d 79 (2d Dist. 1976); *People v. Stambor*, 33 Ill. App.3d 324, 337 N.E.2d 63 (3d Dist. 1975); *People v. Giles*, 35 Ill.App.3d 514, 341 N.E.2d 410 (4th Dist. 1976); *People v. Bosse*, 32 Ill.App.3d 422, 336 N.E.2d 216 (5th Dist. 1975). Those courts have either reasoned that *Wills* made such admonitions unnecessary, or that such an omission is not enough by itself to warrant reversal. Since its decision rested on a construction of an Illinois court rule, the Illinois Supreme Court had noted that the additional admonition was a "procedural change" which involved "no constitutional issue or standard." 330 N.E.2d at 509. Thus, while the failure to advise a defendant on this issue is one factor to be considered in determining whether a plea of guilty was voluntarily and intelligently made under constitutional standards, that omission alone is not of recognized constitutional dimensions in the

Illinois courts. *People v. Bosse, supra* at 218.

Illinois courts have also denied relief in collateral proceedings to review criminal convictions. One appellate court has squarely held that a trial court's failure to admonish a defendant concerning the mandatory parole term is a nonjurisdictional defect which is not cognizable in a state habeas corpus proceeding. *People ex rel. Jenkins v. Department of Corrections*, 32 Ill.App.3d 147, 336 N.E.2d 385 (1st Dist. 1975). In addition, two appellate courts have concluded that the absence or incompleteness of a parole admonition in a pre-*Wills* guilty plea is insufficient to warrant relief under the Illinois Post-Conviction Hearing Act, Ill.Rev.Stat. ch. 38, §§ 122–1 et seq. *People v. Miller*, 36 Ill.App.3d 943, 344 N.E.2d 760 (1st Dist. 1976) (no admonition); *People v. Cox*, 44 Ill.App.3d 945, 3 Ill.Dec. 628, 358 N.E.2d 1313 (1st Dist. 1976) (incomplete admonition). The *Miller* court dismissed the petition without even conducting an evidentiary hearing on the voluntariness of the plea, reasoning that the *Wills* requirement is inapplicable to guilty pleas predating that decision. The *Cox* court reviewed the entire record of the plea hearing before holding that defects in the parole admonition did not rise to the level of a constitutional deprivation and did not by themselves negate substantial compliance with Rule 402. In a similar case, another Illinois court has echoed this reasoning, finding that "even a substantial or total failure to comply with Supreme Court Rule 402 may not necessitate reversal of a conviction obtained on a plea of guilty." *People v. White*, 39 Ill.App.3d 770, 350 N.E.2d 556, 558 (3d Dist. 1976). Finally, the statutory writ of error *coram nobis* is unavailable because more than two years have elapsed since petitioners' guilty pleas were entered and thus such actions would be barred by the two-year statute of limitations. Ill.Rev.Stat. ch. 110, § 72(3).

---

1. Southall's plea was entered on March 19, 1975 and Lawrence Williams' plea was on March 11, 1975. Emanuel Williams pleaded guilty to two separate offenses. His hearings were held on July 31 and August 2 of 1974.

2. One Illinois court has vacated a defendant's conviction where this type of an omission occurred in a guilty plea entered *after* the *Wills* decision. *People v. Blackburn*, 46 Ill.App.3d 213, 4 Ill.Dec. 784, 360 N.E.2d 1159 (5th Dist. 1977).

There is only one noticeable crack in this wall of resistance erected by the Illinois courts to petitioners' claims. In *People v. Wenger*, 42 Ill.App.3d 608, 1 Ill.Dec. 306, 356 N.E.2d 432 (4th Dist. 1976), the trial court improperly admonished the defendant that the maximum sentence that might be imposed was three years, when in fact the statute authorized up to ten years imprisonment. The defendant pleaded guilty and was sentenced to two years probation. After his probation was revoked, a 32 to 96 month sentence was imposed. In reversing the dismissal of defendant's post-conviction petition, the appellate court noted that although Rule 402 defects are usually not of constitutional magnitude, they can provide a constitutional issue cognizable in a post-conviction proceeding if the defendant alleges that noncompliance with Rule 402 resulted in an involuntary or unintelligent plea. It then held that the sentence was incompatible with notions of fundamental fairness and due process, since it had exceeded the maximum risk to which the defendant had ostensibly been exposed at the time of his plea.

The *Wenger* theory would support the present petitioners' claims for relief. In both situations, the sentencing risks were understated by the trial judge, and the actual sentence imposed exceeded the stated limits. In addition, both cases involved a two-stage sentencing process. Nevertheless, the facts in *Wenger* are sufficiently distinguishable from petitioners' situations to lead us to believe the Illinois courts will continue to deny relief for errors in parole admonitions. In *Wenger* the defendant was misinformed about the maximum term of imprisonment. The trial court's duty to accurately communicate this information clearly existed at the time the plea was entered. Rule 402 required the trial court to inform the defendant of "the minimum and maximum sentence prescribed by law." Ill.Rev.Stat. ch. 110A, § 402(a)(2) (1971). In the present cases, however, petitioners received proper disclosures from the trial judge concerning the maximum term of imprisonment, but failed to receive information on their post-imprisonment parole liabilities. At the time their pleas were entered, the trial court was not required to divulge this information, since the terms of Rule 402 did not expressly address the issue and *People v. Wills* had not yet interpreted the rule as imposing such a requirement. Given this distinction and the string of precedents holding such omissions nonactionable, we are led to conclude that *Wenger* is unlikely to presage a shift in Illinois decisional law.

In sum, we hold that requiring petitioners to exhaust their state remedies would be futile in light of the failure of the Illinois courts to apply the *Wills* decision retroactively or to elevate the omission of a parole admonition in pre-*Wills* guilty pleas to constitutional dimensions. Other federal courts have excused exhaustion in similar cases where state courts refuse to apply a legal principle retroactively, *see Baynor v. Warden*, 391 F.Supp. 1254, 1256 (D.Md. 1975); *Ham v. State of North Carolina*, 471 F.2d 406 (4th Cir. 1973), or where state courts have consistently held that the question presented is not one of constitutional magnitude, *see Mohr v. Jordan*, 370 F.Supp. 1149, 1152 (D.Md.1974). If it is clear that the state courts will not grant relief, a petitioner is not required to go through a needless state court proceeding. Accordingly, respondents' motions to dismiss for failure to exhaust state remedies are denied.

Our next task is to determine whether petitioners in fact were uninformed about the mandatory parole term accompanying their sentences during the court proceedings in which their guilty pleas were entered. In each of the three cases, the respondents have supplemented their Rule 12(b)(6) motions to dismiss with transcripts of petitioners' state court hearings. By the addition of these materials, their motions to dismiss may be converted into motions for summary judgment. Fed.R.Civ.P. 12(b). We will therefore assemble the facts in each petitioner's transcript to determine whether their hearings were constitutionally defective under *Baker* standards.

*Lawrence Williams, No. 77 C 2402*

█ On March 11, 1975, petitioner Williams pleaded guilty in the Circuit Court of Cook County, Illinois (No. 74–3339) to a single charge of burglary. Ill.Rev.Stat. ch. 38, § 19–1. At that time, burglary carried a penalty of one to twenty years imprisonment followed by three years of mandatory parole. Ill.Rev.Stat. ch. 38, §§ 19–1, 1005–8–1(b)(3), 1005–8–1(e)(2). Under the terms of a plea agreement between Williams' public defender and the prosecutor, Williams was to receive an indeterminate sentence of from one to two years in prison.

Before accepting the plea, the trial judge admonished the defendant of the consequences of his plea. He had the prosecutor repeat the terms of the plea bargain in open court and elicited Williams' understanding and acceptance of its terms. However, the transcript contains no statement by the court, the prosecutor or the public defender that the recommended sentence included a mandatory parole term:

THE COURT: Mr. Burch [the prosecutor], would you please put the gist of the conference on the record, please.

MR. BURCH: Yes, I will, Judge. I believe I talked with Mr. Menaker [the public defender] several times about this case. We have discussed Lawrence Williams and his background. We have also discussed the case and having discussed all those things I indicated to Mr. Menaker I believe in the last court date that the State would be willing to recommend a period of not less than one nor more than two years in the Illinois State Penitentiary if Mr. Lawrence Williams pleads guilty.

THE COURT: Mr. Menaker, is that your understanding of the agreement?

MR. MENAKER: Yes.

THE COURT: Q. Mr. Williams after those conversations had taken place did Mr. Menaker then talk to you?

A. Yes, Your Honor.

Q. Did he tell you what agreement he had reached, the State was going to recommend or that the agreement was that upon a plea of guilty they would be recommending to the Court a sentence of not less than one year nor more than two years?

A. Yes, Your Honor.

Q. The Court was told that and the Court indicated and will indicate to you that conditionally it would accept the recommendation . . .

Continuing his colloquy with Williams, the judge then received Williams' acknowledgement that he understood the nature of the charges and understood his constitutional rights to remain silent, to be tried before a jury, to be proven guilty beyond a reasonable doubt, and to confront and cross-examine witnesses. A factual basis for the plea was established and Williams understood that by pleading guilty he admitted these facts. The trial judge then described the potential statutory penalty for the charged offense, omitting any mention of a mandatory parole term:

Q. [THE COURT] Before we go any further let me advise you as to the penalty which the statute provides for the offense of burglary.

The Code of Corrections provides that upon a finding of guilty of burglary that you could be sentenced to the penitentiary for a period of not less than one year nor more than twenty years or any number of years between one and twenty and a $10,000 fine. Do you understand that?

A. [WILLIAMS] Yes.

After hearing evidence in aggravation and mitigation of the offense, the trial court sentenced Williams to not less than one nor more than two years in prison.

Williams was imprisoned until May 20, 1976, when he completed his sentence and was released on parole. Williams states in his petition that he was unaware that a mandatory parole term attached to his sentence until approximately two months prior to his discharge. While serving his three year mandatory parole term, petitioner was arrested for violating parole and was declared a parole violator on March 16, 1977. He is presently being held at Stateville Correctional Center in Joliet, Illinois.

Based on this record, Williams' case falls clearly within the holding of *Baker.* He

entered his guilty plea in exchange for the prosecutor's promise of a specific prison term, which was then ratified by the trial judge. Neither the judge, the prosecutor, nor the public defender told Williams during the hearing that a mandatory three year parole term attached to his sentence. Williams served his agreed-upon sentence, and is now serving the additional parole term. Thus Williams entered his guilty plea without a full understanding of its consequences, and is now serving a more onerous sentence than he had been promised. As in *Baker,* Williams' guilty plea was unfairly induced in violation of the due process clause. Because the *Baker* court opted for specific performance of the agreement rather than nullification of the guilty plea, we follow the same course and order Williams released from custody. Respondent's motion for summary judgment is denied and Williams' petition for a writ of habeas corpus is granted.[3]

### Oscar Southall, No. 77 C 2184

On March 19, 1975, petitioner Southall, like petitioner Williams, pleaded guilty in the Circuit Court of Cook County, Illinois (No. 75–228) to one charge of burglary. At that time, burglary carried the same penalty of one to twenty years imprisonment followed by three years of mandatory parole. Pursuant to a plea agreement between Southall's public defender and the prosecutor, Southall was to receive an indeterminate sentence of from one to three years in prison. The Southall transcript is more abbreviated than the Williams transcript, but similarly reveals that neither the trial judge nor the attorneys disclosed the existence of the mandatory parole term during their discussion of either the plea agreement or the possible sentence which could be imposed. The relevant portion of the transcript contains the following passage:

> MR. O'NEAL [the public defender]: Judge, this is Oscar Southall. This is Indictment No. 75–228. On 2–19–75, there was a conference with the State

and the Court and your Honor indicated he would give Mr. Southall one to three years.

> We had a problem in that Southall also is on probation before Judge Strzalka and it is my understanding that Judge Strzalka will terminate probation or if he violates him [(sic) finds that Southall has violated his probation (?)], give him one to three to run concurrent with this sentence.

> So based on those allegations, Mr. Southall will withdraw his plea of not guilty and enter a plea of guilty.

> THE COURT: Mr. Southall, you have heard your attorney Mr. O'Neal indicate that you wish to plead guilty to this offense.

> You are charged in this indictment with the offense of burglary. You understand that on a charge of burglary, you run the possibility of having me impose a sentence upon you of a minimum of one year and a maximum not to exceed 20 years in the Illinois Department of Corrections and impose a fine upon you from $1 to $10,000; do you understand that that is a possibility?

> DEFENDANT: Yes.

> THE COURT: Those are the limits of the sentence I can impose upon you even on a plea of guilty, do you understand that?

> DEFENDANT: Yes, sir.

The trial judge then explained to Southall that by pleading guilty he waived his constitutional rights to a trial by jury and to confront and cross-examine witnesses. He received Southall's acceptance and acknowledgement of these consequences. Southall responded negatively to the question whether his guilty plea had been induced by force, duress, threats or promised rewards. The judge next described his conversation with Judge Strzalka who had previously placed Southall on two years probation in May, 1974 for an earlier offense. After being advised of the pending charge

---

3. Respondent has not indicated that Williams is currently imprisoned on a concurrent sentence which is untainted by constitutional defects. If

he were, the omissions in his earlier guilty plea would not be sufficient by themselves to result in his release.

and the plea negotiations, Judge Strzalka reportedly stated that if Southall pleaded guilty to the burglary charge, he would either find a violation of probation and impose a concurrent sentence for the same term, or would order the probation revoked and terminated as unsatisfactory. (At the probation hearing on June 10, 1976, Judge Strzalka took the second option and terminated Southall's probation as unsatisfactory.) Finally, after establishing a sufficient factual basis for the plea, the trial court accepted the guilty plea and sentenced Southall to an indeterminate term of one to three years in prison.

Southall was imprisoned until September 22, 1975, when he completed his sentence and was released on parole. He was declared a parole violator on October 8, 1976 and is now imprisoned pursuant to the three year mandatory parole provisions which were implicitly incorporated into his original sentence.

We find Southall's situation to be factually indistinguishable from Williams'. For the reasons expressed earlier in this opinion, his guilty plea was unfairly induced in violation of the due process clause. Respondent's motion for summary judgment is denied and Southall's petition for a writ of habeas corpus is granted.

### Emanuel Williams, No. 77 C 1937

In comparison to the two prior cases, the guilty pleas of Emanuel Williams present some novel analytical difficulties. First, there are two guilty pleas instead of one and, second, it appears that one of the two may have included a proper parole admonition.

The first guilty plea was entered on July 31, 1974 in the Circuit Court of Cook County, Illinois (No. 74–951) to a charge of burglary which, as noted previously, carried a penalty of one to twenty years imprisonment plus three years of mandatory parole. The terms of the plea agreement, if any, do not appear in the hearing transcript. Nor is there any indication that a conference between the prosecutor and Williams' public defender was held or that Williams received a promise of a specific sentence from the prosecutor. The only statement relevant to this issue appears near the end of the hearing, as the judge was preparing to announce the sentence. At that point, the prosecutor interrupted the judge and interjected that her recommendation was for a sentence of one to three years. Immediately thereafter, the judge followed this recommendation and sentenced Williams to a one to three year term in prison.

Before accepting the plea and imposing sentence, however, the trial judge read the terms of the indictment and explained Williams' constitutional rights, pausing at appropriate intervals to test Williams' understanding of these matters. The judge then elicited Williams' admission of the facts and allegations stated in the indictment charging him with burglary, and described the potential sentence and its relationship to recommended sentences in plea agreements:

Q [THE COURT]: Now, the crime of Burglary under the statute of the State of Illinois is a class two felony, providing for a sentence to the penitentiary of a period from one to 20 years or any indeterminate period that I'd feel appropriate.

Do you understand that and it's the sole responsibility of me as Judge to enter this sentence and I'm not bound by any previous determinations although in my province as Judge of the case I can consider such recommendations in determining the nature of the sentence to be imposed?

A [WILLIAMS]: Yes.

The court then accepted the plea and pronounced sentence. As an afterthought, the prosecutor remarked that the guilty plea must be supported by a factual basis in the record and noted that the judge heard testimony supporting the charges at the earlier preliminary hearing. In response, the judge concurred that if the testimony of the complaining witness were presented, it would substantiate the allegations of the complaint. At no time during the hearing did the judge, prosecutor or public defender mention the existence of a mandatory parole term.

Two days later, on August 2, 1974, Williams pleaded guilty in the Circuit Court of Cook County, Illinois (No. 74–2032) to committing theft in violation of Ill.Rev.Stat. ch. 38, § 16–1(a)(1). Because the stolen property was valued at more than $150, the offense was classified as a Class 3 felony carrying a penalty of one to ten years imprisonment and a mandatory parole term of three years. Ill.Rev.Stat. ch. 38, §§ 16–1(e)(3), 1005–8–1(b)(4), 1005–8–1(e)(2).

The trial judge, who was not the same as the judge who accepted the first guilty plea, began the hearing by reading the information charging Williams with theft, by receiving Williams' stated understanding of its terms, and by hearing Williams announce a plea of guilty to the offense. The judge then embarked on a lengthy exposition of the consequences of the plea and included a somewhat cursory statement on the mandatory parole term:

THE COURT: On your plea of guilty to this offense, you could be sent to the penitentiary for a term of years of not less than one and not more than ten years; in addition, you could be fined up to ten thousand dollars and *you would be subject to a parole period of three years.* You are further advised that you have a right to plead not guilty to this charge and persist in your plea of not guilty. If, however, you wish, you may plead guilty. If you plead guilty, you waive your right under the Fifth Amendment and that is your right against self-incrimination and you waive your rights under the Fourth Amendment and that is your right to be free from unreasonable searches and seizures without an arrest warrant or a search warrant. When you plead guilty, there will not be a trial of any kind so that by pleading guilty, you waive your right to trial by jury and your right to be confronted by witnesses against you. You also have a right to be indicted by the Grand Jury and that by agreeing to be tried on this information, you waive your right to indictment by the Grand Jury and you waive your right to trial by jury. Do you understand all of these things?

DEFENDANT: Yes, sir. (Emphasis added.)

Although this admonition does speak of the defendant's parole obligations in mandatory terms ("would" rather than "could"), there are several reasons for questioning its sufficiency. It was made in the context of the possible sentence which could be imposed, rather than in the context of the actual sentence which would be imposed if the recommendation in the plea agreement were accepted. It was followed by a long litany of Williams' constitutional rights that may have weakened or nullified the impact of the statement. Williams was not requested to indicate his specific understanding of each of the enumerated consequences, but merely gave a general all-inclusive answer. Finally, the statement does not meet the standards set by the Illinois Supreme Court in *Wills.* *See* 330 N.E.2d at 508. The judge did not state that the mandatory parole term must attach to the sentence that was imposed, or that the defendant would be subject to the jurisdiction of prison authorities for a period of time equal to the maximum term of imprisonment provided in the indeterminate sentence and the parole term.

These deficiencies were not cured by subsequent statements at the hearing. The trial judge and the attorneys made no mention of the mandatory parole term when they discussed the specific sentence which was promised in the plea agreement:

THE COURT: The State's Attorney has indicated that an agreement has been reached concerning the penalty to be imposed. Are you familiar with the terms of that agreement?

DEFENDANT: Yes, sir.

THE COURT: What are the terms of that agreement?

DEFENDANT: Guilty.

THE COURT: No—

MR. KRAHL [the public defender]: No, the penalty.

THE COURT: Do you recall what was recommended?

DEFENDANT: One to three years in the Illinois State Penitentiary.

The defendant's remark followed closely upon the judge's statement on mandatory parole yet omitted any recognition of its applicability. The court and attorneys made no effort to correct the omission. Consequently, it is difficult for us to believe that the judge's earlier statement fell upon understanding ears, or that any of the participants at the hearing drew the necessary connection between Williams' possible sentence and his actual liability for a mandatory parole term under the specific sentence recommended in the plea agreement.

After establishing a factual basis for the plea, the court returned to a discussion of the possible sentence:

THE COURT: Mr. Orange, also known as Mr. Williams, although an agreement as to the penalty has been reached between your attorney and the State's Attorney, the Court is not bound to accept those terms; I could impose a lesser or a greater penalty in this case. Do you understand this?

DEFENDANT: Yes, sir.

The judge then accepted the guilty plea and imposed sentence, again without mentioning the mandatory parole term:

THE COURT: As per agreement, I hereby sentence the defendant, Eugene Orange also known as Emanuel Williams to one year to three years to run concurrently with the other information.

As a result of the two guilty pleas, Williams was imprisoned and served concurrent sentences for the stated term. He was released on parole on August 23, 1976 but was returned to custody for a parole violation on December 10, 1976. He is presently imprisoned at the Stateville Correctional Center in Joliet, Illinois.

On the basis of this record, respondent urges that the trial judge's statement on mandatory parole during the second guilty plea was constitutionally sufficient. Furthermore, invoking the "concurrent sentence doctrine" described in *Benton v. Maryland,* 395 U.S. 784, 89 S.Ct. 2056, 23 L.Ed.2d 707 (1969), respondent contends that because Williams served concurrent sentences and one sentence is valid, he is

not entitled to habeas relief. Although some circuits continue to breathe life into this doctrine, *see, e. g., van Geldern v. Field,* 498 F.2d 400, 403 (9th Cir. 1974), the Seventh Circuit has been very reluctant to apply it. In *United States v. Tanner,* 471 F.2d 128, 140 (7th Cir. 1972), the court adopted the rule that if there is a possibility that undesirable collateral consequences might flow from the challenged conviction, the validity of the conviction may be examined, even though concurrent sentences have been imposed. The court noted that an unreviewed conviction "could increase an appellant's future sentencing under an habitual offender statute, or adversely affect his chances for parole, or be used to impeach his testimony at a future trial." 471 F.2d at 140. The court has subsequently reaffirmed the vitality of the *Tanner* decision. *Wright v. United States,* 519 F.2d 13, 19–20 (7th Cir. 1975). Although *Tanner* and *Wright* involved direct appeals rather than habeas actions, at least one district court in this circuit has rejected the applicability of the doctrine in a § 2254 action. *United States ex rel. Guy v. McCauley,* 385 F.Supp. 193, 195 (E.D.Wis.1974). Because we cannot rule out the possibility of adverse collateral effects from petitioner's two felony convictions, we will independently examine the constitutional sufficiency of each of his guilty pleas.

The hearing transcript for Williams' first guilty plea reveals no admonition concerning the mandatory parole term which accompanied his sentence. By itself, however, this omission is insufficient to warrant habeas relief. The *Baker* court imposed the additional requirement that the petitioner suffer a detriment as a result of the omission. 551 F.2d at 183. A detriment is apparent if the petitioner agreed to plead guilty in return for a promise of a specific sentence, and then received a more onerous sentence because of the application of the undisclosed parole term. But no detriment exists if no specific sentencing bargain is made, and the combined duration of the prison and parole terms does not exceed the maximum stated prison sentence under the

applicable statute. Here Williams' possible combined sentence of six years does not exceed the maximum risk of twenty years stated by the judge. The crucial issue thus becomes whether the prosecutor promised Williams a specific sentence of one to three years—a sentence which is exceeded by petitioner's present incarceration. We cannot resolve this issue on the present record. The plea agreement, if any, was not discussed at the hearing. However, the perfunctory nature of the proceedings and the court's immediate adoption of the prosecutor's recommended sentence for this term create an inference that such an agreement existed. Because the evidence is inadequate to support a final conclusion on this issue, the adequacy of Williams' first guilty plea is not ripe for summary judgment.

The adequacy of Williams' second plea can be resolved on the present record. Although the trial judge did mention the parole provision in his discussion of the possible statutory penalties for the offense charged, the applicability of the parole term was not specifically brought home to Williams either in the discussion of the precise terms of his plea agreement, or in the judge's pronouncement of sentence. In the context of its presentation, the mandatory parole provision was shelved along with possible statutory penalties and numerous abstract constitutional rights, rather than with the nuts and bolts of the specific sentence promised by the prosecutor. Williams' expressed understanding was that his sentence was for a maximum of three years. No one disabused him of that belief. The trial court and the attorneys who were present acquiesced in that interpretation. Williams has now suffered a detriment by being imprisoned in excess of the terms of his specific sentencing agreement. We conclude that Williams was not fully and adequately informed of the consequences of his plea of guilty to the theft charge, and that his plea was defective under due process standards. Accordingly, Williams' petition for a writ of habeas corpus is granted with

respect to his theft conviction. We defer ordering his release from custody until we decide the validity of his concurrent sentence for burglary.

### ON MOTION TO RECONSIDER *

In their motions to reconsider, respondents argue for the first time that the *Baker* rule should not be applied to guilty pleas entered prior to March 17, 1977, the date of the *Baker* decision. Since all three of the guilty pleas here fall into that category, respondents ask us to dismiss all three habeas petitions. We reject this argument, and hold that *Baker* should be given retrospective application. Our reasons are twofold.

First, the *Baker* decision did not enunciate a new rule of constitutional law. Retroactivity questions are presented only where a decision establishes a new principle of law, ". . . either by overruling clear past precedent on which litigants may have relied, . . . or by deciding an issue of first impression whose resolution was not clearly foreshadowed." *Chevron Oil Co. v. Huson,* 404 U.S. 97, 106, 92 S.Ct. 349, 355, 30 L.Ed.2d 296 (1971). Unlike many Supreme Court decisions which have not been applied retroactively, *Baker* was not a landmark decision which overruled established precedent. Nor did it make new law. The *Baker* court based its decision on the principle that a defendant who enters a guilty plea must have " 'a full understanding of what the plea connotes and of its consequence.' " *United States ex rel. Baker v. Finkbeiner,* 551 F.2d 180, 183 (7th Cir. 1977), *quoting Boykin v. Alabama,* 395 U.S. 238, 243–44, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969). The "full understanding of the consequences" formulation goes back at least fifty years. *Kercheval v. United States,* 274 U.S. 220, 223, 47 S.Ct. 582, 71 L.Ed. 1009 (1927). The *Baker* court also rested its holding on the 1971 Supreme Court decision in *Santobello v. New York,* 404 U.S. 257, 262, 92 S.Ct. 495, 499, 30 L.Ed.2d 427, where the Court held that "when a plea rests in any significant

---

\* This Memorandum Opinion does not apply to the case of *United States ex rel. Emanuel Williams v. People of the State of Illinois,* 77 C 1937.

degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration, such promise must be fulfilled." *Santobello* was extant for nearly three years before the first guilty plea in the present cases was entered.

Respondents argue that the earlier Seventh Circuit decision in *Bachner v. United States,* 517 F.2d 589, 597 (7th Cir. 1975), demonstrates that *Baker* was completely unexpected. We disagree. *Bachner* held that a federal defendant who pleaded guilty could not complain of the court's failure to advise him of the mandatory parole term. However, the court specifically found that the defendant had suffered no prejudice or detriment from the omission because he had not made a specific sentencing agreement with the prosecutor and had not been imprisoned for a term exceeding the disclosed maximum sentence under the applicable statute. · The *Baker* court distinguished *Bachner* on its facts, and held that Baker did suffer a detriment since he had made a specific sentencing agreement and the imposition of the special parole term caused him to suffer a more onerous sentence than he had been promised. Thus the *Baker* decision does not represent a discontinuity in legal thinking. Instead, it represents the application of existing precedent to particular and somewhat different facts. If we were to analyze the retroactivity issue in every case in which the appellate courts have distinguished prior case law, the applicability of innumerable legal principles would be open to dispute, the responsibilities of the district courts would be beset with continual confusion, and large groups of similarly-situated petitioners might be unfairly denied the benefits of current decisions.

■ Second, even if we assume that *Baker* established a new rule, the relevant criteria for determining retroactivity do not weigh against retrospective application. The Supreme Court has provided full retroactivity

in two situations: 1) where the new rule remedies a substantial defect in the truth-finding process at trial, a defect which seriously questions the accuracy of guilty findings, *Williams v. United States,* 401 U.S. 646, 653, 91 S.Ct. 1148, 28 L.Ed.2d 388 (1971) and 2) where the new rule accords constitutional immunity to conduct which had previously been penalized, *Robinson v. Neil,* 409 U.S. 505, 509, 93 S.Ct. 876, 32 L.Ed.2d 115 (1971). Only the first situation is potentially applicable here.

Full disclosure of all the consequences of a guilty plea enhances the reliability of the voluntariness determination at the plea hearing. *See Halliday v. United States,* 394 U.S. 831, 832–33, 89 S.Ct. 1498, 23 L.Ed.2d 16 (1969). A defendant with a colorable defense to the charge made against him may evaluate a guilty plea differently if he faces a straight one year sentence rather than one year plus three years of mandatory parole. His decision to forego trial may be affected and the outcome of that by-passed trial might have been favorable to him. Thus, the *Baker* rule speaks to the integrity of the process by which guilt is determined in an overwhelming percentage of the cases in which an accused is found guilty.[1]

■ Even if *Baker* is not entitled to automatic retroactive application the three-pronged balancing test utilized by the Court in other situations supports retroactivity. That test has three factors: 1) the purpose of the new rule, 2) the extent of reliance on the old rule and 3) the effect on the administration of justice of a retroactive application of the new rule. *Stovall v. Denno,* 388 U.S. 293, 297, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967).

■ The purpose of the *Baker* rule is twofold. First, it assures that a defendant does not enter a guilty plea without a full understanding of the consequences of his decision (*Boykin v. Alabama, supra*). Second, by attaching a remedy which vacates only the undisclosed parole term, the

---

1. Respondents have advised us that of 13,571 persons convicted of felonies in Illinois in 1974, 91.2% or 12,370 pleaded guilty.

rule comports with fundamental fairness by compelling the state to keep the promises it makes (*Santobello v. New York, supra*).

The first purpose is important since it touches on the basic integrity of the judicial process. However, because the *Baker* decision only enhanced a pre-existing constitutional prohibition against the acceptance of uninformed, involuntary guilty pleas, the non-retroactively of *Baker* "is less likely to result in the continued incarceration of those whose convictions or sentences rest on unconstitutional acts." *Michigan v. Payne,* 412 U.S. 47, 54, 93 S.Ct. 1966, 1970, 36 L.Ed.2d 736 (1973). Defendants still have avenues open to them to challenge their conviction on similar but less exacting standards.

The second purpose of the *Baker* rule is more weighty. *Baker* treats a negotiated guilty plea as an agreement between the defendant and the state. The breach of that agreement by the imposition of a mandatory parole term creates a specific and quantifiable injury flowing directly to the defendant. The defendant performs his part of the sentencing bargain, and then is unfairly compelled by the state to suffer an additional detriment. This breach can be remedied by specific performance of the agreement through retroactive application of the *Baker* rule.

There is an additional consideration at work here. In several cases the Supreme Court has declined to retroactively apply its new decisions on the Fourth Amendment's exclusionary rule, since the purpose of the rule is to deter wrongful conduct of law enforcement officers, not to remedy past wrongs. *Desist v. United States,* 394 U.S. 244, 254, 89 S.Ct. 1030, 22 L.Ed.2d 248 (1969). The present cases present a different time frame. The second purpose of the *Baker* rule is designed not so much to instill an awareness of the accused's constitutional rights into prosecutors and judges engaged in plea bargaining, but to make certain that the state performs all objectively manifested elements of a sentencing agreement. For example, in the present cases, the petitioners having already served what they believed to be their full sentences, are currently subject to or incarcerated under an undisclosed mandatory parole term. Thus, to apply retroactivity here is not to give a windfall to the victim of prior misconduct, but instead is to fulfill the matured and fully justifiable expectation that the state will comply with the terms of its bargain. Consequently, the purposes of the *Baker* rule clearly favor retroactive application.

The remaining factors in the *Stovall* equation—reliance and burden on the administration of justice—are of controlling significance "only when the purpose of the rule in question [does] not clearly favor either retroactivity or prospectivity." *Michigan v. Payne,* 412 U.S., *supra* at 55, 93 S.Ct. at 1971, *quoting Desist v. United States, supra,* 394 U.S. at 251, 89 S.Ct. 1030. Respondents correctly point out that until the 1975 Illinois Supreme Court decision in *People v. Wills,* 61 Ill.2d 105, 330 N.E.2d 505, the lower Illinois courts relied on a prior Illinois Supreme Court decision which held that Supreme Court Rule 402 did not require an admonition concerning mandatory parole. However, we have already noted the applicable United States Supreme Court decisions which conflicted with this now-overruled opinion, and we are not inclined to hold that trial judges can give greater credence to statutory constructions of the Illinois Supreme Court than they can to constitutional pronouncements of the United States Supreme Court.

Respondents have also accumulated statistics which suggest that retroactive application of the *Baker* decision could potentially apply to some 30,000 guilty pleas entered between the 1973 effective date of the mandatory parole act and the 1975 *Wills* opinion. They argue that "to force the State to reprocess this large number of prisoners would over-tax the resources of the Illinois circuit courts." However, by its very terms, *Baker* does not require Illinois to vacate 30,000 guilty pleas and to assemble stored-up documents and foggy memories for new plea hearings. Nor does it require the state to vacate the original sentences served by the petitioners. Instead the court

only directed the state to excise the offending portion of the sentence—the mandatory parole term—if there is a breach of a specific sentencing agreement. The existence of such an agreement can be easily established through the transcript of the plea hearing which "shall be taken verbatim, transcribed, filed, and made a part of the common-law record." Rule 402(e), Illinois Supreme Court Rules. On this issue, the words of Mr. Justice Rehnquist in *Robinson v. Neil,* 409 U.S. 505, 509–10, 93 S.Ct. 876, 878–79, 35 L.Ed.2d 29 (1973), are pertinent:

> "In *Furman v. Georgia* [408 U.S. 238, 92 S.Ct. 2726, 33 L.Ed.2d 46], *supra,* our mandate was tailored so as to deny to the State only the authority to impose a punishment that we held unconstitutional, without the necessity of a redetermination of the factual question of whether the offense had in fact been committed. Thus, the prejudice to the State resulting from the necessity of an entirely new trial because of procedures newly found to be constitutionally defective, with the attendant difficulties of again assembling witnesses whose memories would of necessity be dimmer for the second trial than for the first, was not present. *That which was constitutionally invalid could be isolated and excised without requiring the State to begin the entire factfinding process anew.*" (emphasis added)

We hold, therefore, that *United States ex rel. Baker v. Finkbeiner* is to be given full retroactive effect. Respondents' motion to reconsider is denied.